[No. 48543-7.   En Banc.   March 10, 1983.]

*In the Matter of the Personal Restraint of*
BIG CY KOLOCOTRONIS, *Petitioner.*

*Michael Mirra* of *Evergreen Legal Services,* for petitioner.

*Kenneth O. Eikenberry, Attorney General, Anne O. Shaw* and *Karen McCarty Lundahl, Assistants, Norm Maleng, Prosecuting Attorney,* and *Gerald A. Smith, Deputy,* for respondent.

CUNNINGHAM, J.*—Petitioner, Cyril Athana Kolocotronis, seeks review of a Court of Appeals, Division One, order dismissing his personal restraint petition. We affirm.

---

*Judge D. J. Cunningham is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

Petitioner presents statutory and constitutional challenges to his continued confinement in mental institutions. Petitioner's confinement arises from the following series of events.

In 1959, petitioner was tried in St. Louis, Missouri, on the charge of assault with intent to ravish. He was acquitted by reason of insanity and committed to Fulton State Hospital. Whether he was thereafter released or escaped is not known but, at any rate, he came to this state and, in 1965, stood trial on charges of first degree burglary, second degree assault and attempted rape. Once again, he was acquitted by reason of insanity. This time he was committed to Northern State Hospital. He appealed his commitment without success. *See State v. Kolocotronis*, 73 Wn.2d 92, 436 P.2d 774 (1968). In 1973, petitioner was conditionally released. He did not do well and was recommitted. This pattern of release and recommitment was repeated several times over the next few years.

On December 28, 1975, while on release, the petitioner approached a group of young children and, after showing them a picture of a nude woman, exposed himself to them. Afterwards, he wrote to the mother of one of the children, offering to marry the 8–year–old girl. Following this incident, petitioner was charged with the crimes of indecent exposure to a child under the age of 15 years and soliciting a minor for immoral purposes. He was tried and found not guilty by reason of insanity on the indecent exposure charge. He was once again committed to a hospital for treatment.

After approximately 6 years of relatively unsuccessful treatment and numerous unsuccessful petitions for conditional and outright release, petitioner requested that he be released on condition that he be returned to the Fulton State Hospital for treatment pursuant to his 1960 commitment. An order to this effect was entered on April 30, 1982, and petitioner was transferred to Fulton State Hospital, Fulton, Missouri.

Prior to July 1, 1976, and at the time of petitioner's trial,

the crime of indecent exposure was subject to sanctions under RCW 9.79.080(2). That section provided:

Every person who . . . makes any indecent or obscene exposure of his person, or of the person of another, whether with or without his or her consent, shall be guilty of a felony, and shall be punished by imprisonment in the state penitentiary for not more than twenty years, or by imprisonment in the county jail for not more than one year.

This statute was repealed by RCW 9A.98.010(207) and replaced by RCW 9A.88.010, which provides:

(1) A person is guilty of public indecency if he makes any open and obscene exposure of his person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm.

(2) Public indecency is a misdemeanor unless such person exposes himself to a person under the age of fourteen years in which case indecency is a gross misdemeanor.

When a person is found not guilty by reason of insanity, the statute governing commitment of the criminally insane takes over. Turning to that body of law, RCW 10.77.110 provides, in part:

If a defendant is acquitted of a felony by reason of insanity, and it is found that he is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions, the court shall direct his final discharge. If it is found that such defendant is a substantial danger to himself or others and in need of control by the court or other persons or institutions, the court shall order his hospitalization, or any appropriate alternative treatment less restrictive than detention in a state mental hospital, pursuant to the terms of this chapter. If it is found that such defendant is not a substantial danger to other persons, or does not present a substantial likelihood of committing felonious acts jeopardizing public safety or security, but that he is in need of control by the court or other persons or institutions, the court shall direct his conditional release.

RCW 10.77.020(3) states the maximum term an individual may be confined pursuant to this statute:

> (3) Whenever any person has been committed under any provision of this chapter, or ordered to undergo alternative treatment following his acquittal of a crime charged by reason of insanity, such commitment or treatment cannot exceed the maximum possible penal sentence for any offense charged for which he was acquitted by reason of insanity. If at the end of that period the person has not been finally discharged and is still in need of commitment or treatment, civil commitment proceedings may be instituted, if appropriate.

Prior to the expiration of the term the defendant must prove, by a preponderance of the evidence, that he or she is safe to be at large. RCW 10.77.200(2). Once the maximum term of imprisonment has expired, however, the criminally insane person is entitled to automatic release, unless the State can prove, in civil commitment proceedings, that the individual is still dangerous. In these proceedings, "the *State* must prove continued dangerousness by clear, cogent and convincing evidence" if the patient is to be kept confined. *State v. McCarter,* 91 Wn.2d 249, 254, 588 P.2d 745 (1978).

The issue raised by this petition is what effect does a subsequent reduction in the maximum penal term for a given crime have on the confinement of one committed pursuant to the criminal insanity statute? Petitioner presents statutory and constitutional arguments to support the proposition that a subsequent change in the maximum term entitles him to the benefit of the lower term. Since his term under the new maximum has expired, adoption of petitioner's arguments would require the State to commit petitioner pursuant to the civil commitment procedures.[1]

Respondent argues that the case may be disposed of on

---

[1]Because petitioner now resides in Missouri, the practical effect of applying the new maximum would be an end of this State's claims on petitioner. Because he is also being held pursuant to an independent commitment order originating in Missouri, a decision in petitioner's favor would not result in his release from confinement.

various procedural grounds, including lack of jurisdiction and mootness. We find these arguments unpersuasive.[2] Also, this case presents important issues that should be resolved. Proceeding to the merits, therefore, we disagree with petitioner's interpretation of these statutes and hold the prior maximum governs.

## I

Petitioner argues first that the Legislature intended retroactive application of the new maximum contained in RCW 9A.88.010. This result, as it applies to those *incarcerated* under the old statute, is specifically prohibited by RCW 9A.98.020. That statute states:

> The laws repealed by RCW 9A.98.010 are repealed except with respect to rights and duties which matured, penalties which were incurred, and proceedings which were begun before July 1, 1976.

In addition, we have recently held that Const. art. 1, § 14 does not "[prohibit] incarceration beyond the present maximum sentence of a prisoner sentenced under a repealed statute which provided for longer sentences than the present maximum". *See Harris v. Kastama*, 98 Wn.2d 765, 766, 657 P.2d 1388 (1983).

Petitioner's case presents a slightly different issue, however. Petitioner argues that the underlying criminal term serves as a legislative judgment about the seriousness of the crime and the dangerousness of the individual. Thus, petitioner asserts:

---

[2] Respondent urges the court lacks jurisdiction because the petitioner is being held out of state, pursuant to an order originating in Missouri. Respondent's argument misperceives the relief sought by petitioner. Petitioner recognizes this court's inability to order his release from confinement but seeks release from the terms of the conditional release order of April 1982. That order, issued by a King County Superior Court judge, conditions petitioner's release from Western State Hospital on his confinement at Fulton State Hospital. Clearly, this court has jurisdiction to evaluate the validity of that order. Similarly, we cannot agree that this case is moot. Petitioner is still subject to the terms of the conditional release order. Also, until petitioner is finally discharged, the order may have collateral effects. *See generally State v. Rinaldo*, 98 Wn.2d 419, 655 P.2d 1141 (1982).

The legislature has chosen two criteria reflecting the predictive value of an act to limit the commitments of insanity–acquittees. The primary limit is the maximum penal term for the underlying offense. R.C.W. 10.77-.020(3). The legislature uses the maximum penal term to demarcate the time period during which the insanity–acquittee's prior conduct retains a value in predicting continuing dangerousness that justifies the more restrictive release procedures.

Brief of Petitioner, at 11.

■ We disagree with petitioner's characterization of the role served by RCW 10.77.020(3). The maximum penal term is not simply a predictive tool as to dangerousness, but a legislative recognition of the constitutional problems inherent in any other rule. A review of the law in this area demonstrates this fact. As pointed out by Greenwald, *Disposition of the Insane Defendant After "Acquittal"—The Long Road From Commitment to Release,* 59 J. Crim. L., Crim. & Police Sci. 583 (1968), historically, those acquitted by reason of insanity were subject to indeterminate commitment. *See, e.g.,* former RCW 10.76.070. In the late sixties and early seventies, several United States Supreme Court decisions suggested that such sentences were unconstitutional. *Baxstrom v. Herold,* 383 U.S. 107, 15 L. Ed. 2d 620, 86 S. Ct. 760 (1966) (denying a criminally insane person the right to a jury review of his commitment at the expiration of the underlying penal term, while providing that procedure to those civilly committed, violates equal protection); *Humphrey v. Cady,* 405 U.S. 504, 31 L. Ed. 2d 394, 92 S. Ct. 1048 (1972) (procedures for continued confinement pursuant to Wisconsin's Sex Crime Act not justified by State's allegation that commitment under this act was triggered by a criminal conviction); *Jackson v. Indiana,* 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972) (due process prohibits the indefinite confinement (without civil commitment) of one incompetent to stand trial).

Following these decisions, the Washington Legislature repealed RCW 10.76.070 and replaced it with RCW 10.77-.020(3). The new statute, apparently in recognition of the

constitutional limitation of the Court's decision in *Jackson v. Indiana, supra,* contained the language which ties an individual's commitment to the maximum penal term. Thus, we conclude the Legislature's primary purpose in tying confinement to the maximum penal term is to give recognition to the constitutional doctrine enunciated in these cases.

Petitioner offers a second argument to support his "predictive value" theory. He cites the limitation contained in RCW 10.77.110 as support for the proposition that those convicted of misdemeanors are less dangerous. The pertinent part of RCW 10.77.110 states:

> If the defendant is acquitted by reason of insanity of a crime which is not a felony, the court shall order the defendant's release or order the defendant's continued custody only for a reasonable time to allow the county-designated mental–health professional to evaluate the individual and to proceed with civil commitment pursuant to chapter 71.05 RCW, if considered appropriate.

We are unable to glean the clear statement of legislative intent from this section as suggested by petitioner. Equally likely explanations for the felony–nonfelony distinction involve the State's desire to conserve its resources,[3] coupled with a recognition that those who commit serious crimes are more in need of treatment. Although the distinction may broadly relate to the dangerousness of the individual, we cannot agree that it is the sole reason for the dichotomy.

In addition, we believe the result urged by petitioner runs contrary to the Legislature's intent. As already noted above, the criminal code contains a specific savings statute which prohibits retroactive application of the new code to those incarcerated. The statutes governing the commitment of the criminally insane, likewise, preclude retroactivity. RCW 10.77.900(1) states:

---

[3]Along these lines, it is interesting to note that the State must bear the cost of those confined pursuant to the criminal commitment statutes, while those civilly committed are primarily responsible for the costs of treatment. *Compare* RCW 10.77.250 *with* RCW 71.05.100.

(1) Any acts done before July 1, 1973 and any proceedings then pending and any constitutional right or any action taken in any proceeding pending under statutes in effect prior to July 1, 1973 are not impaired by this chapter.

Petitioner relies on RCW 10.77.900(2), however, and urges that that subsection counteracts the provision of .900(1). RCW 10.77.900(2) provides:

(2) This chapter shall also apply to persons committed under prior law as incompetent to stand trial or as being criminally insane and to any proceedings in court then pending or thereafter commenced regardless of when the proceedings were commenced, except to the extent that in the opinion of the court, the former procedure should continue to be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedures of this chapter.

We disagree with the proposition that this subsection indicates the Legislature's intent to retroactively apply the new maximum. First, RCW 10.77.900(2) deals only with the retroactivity of procedures contained in RCW 10.77. It can, therefore, have no effect on maximum terms set according to the provisions of RCW Title 9A. Also, the subsection in question refers to application of the 1973 code to pre–1973 commitments. Since petitioner was confined in 1976, this subsection does not apply to petitioner's case. Assuming that it did, however, subsection .900(2) allows the court to apply the former procedures where justice requires or where application of the new procedure is infeasible.

This is such a case. When, as here, an individual has been held pursuant to the former maximum term, it would be awkward to require a reevaluation of the case under the new statutes, since such a procedure cannot be done without comparing the facts of each case, against the statutory elements of each possible offense. Had the Legislature intended this result, it could have provided for it. It has not. In the absence of a clear statement by the Legislature expressing its intent to apply this statute retroactively, we will not do so.

## II

Petitioner next raises several constitutional challenges to the State's application of the former maximum sentence. Petitioner first suggests that his continued confinement deprives him of liberty without due process of law. We disagree. The procedures contained in RCW 10.77 include the full panoply of protections required by due process, and petitioner has taken advantage of these. For instance, most recently, he has had a jury determine that he continues to present a substantial likelihood of committing felonious acts jeopardizing public safety or security. We view these and other protections contained in RCW 10.77 as adequate to insure petitioner's due process rights.

Petitioner's substantive due process claim is also unpersuasive. Petitioner alleges that his confinement, beyond a period when the crime he committed retains predictive value, violates due process. Petitioner's argument ignores the fact that his continued confinement is based upon his continued dangerousness, as established by recent violent acts. Also, his argument rests upon the supposition that the link between maximum penal term and maximum confinement rests solely on the predictive value of the crime. As noted above, we find this analysis unpersuasive.

Petitioner next claims his right to equal protection of the laws has been denied. Petitioner cites no authority for the proposition that equal protection requires retroactive application of the new maximum term. Instead, he relies upon general statements of constitutional law that suggest the discrimination he identifies is subject to strict scrutiny. The United States Supreme Court has not explicated a precise standard, but our court has utilized the rational relationship test. *See In re Patterson,* 90 Wn.2d 144, 150, 579 P.2d 1335 (1978). We believe that the State has identified a sufficient interest here to justify its procedures. That interest is twofold: providing treatment to the mentally ill and protecting the public from dangerous individuals. *See generally Jones v. United States,* 432 A.2d 364 (D.C. 1981), *cert. granted,* 454 U.S. 1141 (1982).

Also, petitioner incorrectly identifies the group to which he is similarly situated. Petitioner asserts that we must compare his situation to that of those who are acquitted by reason of insanity of committing indecent exposure after July 1, 1976. The more appropriate comparison is between petitioner and those convicted and incarcerated before this date. *See generally Baxstrom v. Herold,* 383 U.S. 107, 15 L. Ed. 2d 620, 86 S. Ct. 760 (1966). Since the State has not applied the new maximum to these individuals, it is under no obligation to do so to petitioner.

Furthermore, in the context of incarceration pursuant to former maximums, the Ninth Circuit Court of Appeals has held that the equal protection clause is not violated by treating defendants differently. In *Montague v. Vinzant,* 643 F.2d 657 (9th Cir. 1981), the court upheld the constitutionality of RCW 10.01.040, one of the savings statutes relied upon here by the State. In doing so, Judge Wright noted:

> Limiting the retroactive effect of the law to pending cases provides an obvious saving of judicial and law enforcement resources. This was the rule at common law . . . and the legislature had a rational basis for adopting it here.

*Montague,* at 660.

Finally, petitioner urges that the Eighth Amendment and our State's counterpart require that we apply the new maximum. Initially, we note that the United States Supreme Court grants great leeway to the states in determining maximum sentences. *See Hutto v. Davis,* 454 U.S. 370, 70 L. Ed. 2d 556, 102 S. Ct. 703 (1982) and *Rummel v. Estelle,* 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980).

In *State v. Fain,* 94 Wn.2d 387, 617 P.2d 720 (1980), however, our court, while recognizing that *Rummel* controlled the Eighth Amendment issue, rejected the Court's reasoning and applied our state constitution to overturn a

habitual criminal sentence. Petitioner urges that our analysis in *Fain* requires us to hold that his continued confinement violates Const. art. 1, § 14. We disagree. A virtually identical argument was advanced and rejected in the consolidated cases of Harris v. Kastama and Rogers v. Spalding. *Harris v. Kastama,* 98 Wn.2d 765, 657 P.2d 1388 (1983). Harris and Rogers were each convicted of indecent liberties, which at the time of their conviction was subject to a maximum term of 20 years. Petitioner Harris was also convicted of indecent exposure under the same statute proscribing Kolocotronis' actions. The 1976 revisions in the criminal code resulted in the maximums for these crimes being reduced to 10 years and 1 year respectively. In *Harris,* we held that the reduction in penalty did not alone establish punishment so disproportionate as to establish cruel punishment. In doing so, we noted sexual offenses against children pose a considerable threat to the peace and good order of society and that absent additional information as to the nature of the offenses, we would not find a violation of Const. art. 1, § 14. The same analysis applies here. Like Harris, Kolocotronis was charged with crimes against children. Like *Harris* and Rogers, the present sparse record contains insufficient evidence for us to conclude that the 20–year maximum was disproportionate. In addition, we believe confinement to mental institutions is sufficiently unlike incarceration to suggest that Const. art. 1, § 14 should not be applied to judge the *length*[4] of confinement. Here, petitioner's confinement is based on his need for treatment. Should Kolocotronis' condition improve to the point where he would be safe to be at large, he would be released in accordance with RCW 10.77.

For the reasons set out above, we hold that Mr. Kolocotronis may continue to be confined pursuant to the terms of

---

[4]The provision may be useful, however, in evaluating petitioner's treatment or conditions of confinement.

his original acquittal by reason of insanity and the maximum allowed at that time.

WILLIAMS, C.J., and STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.