David Lee HICKEY, et al.,
Petitioners-Appellants,

v.

Charles MORRIS, Respondent-Appellee.

No. 83–3607.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1983.

Decided Dec. 23, 1983.

As Amended March 5, 1984.

**544**

Michael Mirra, Evergreen Legal Services, Steilacoom, Wash., for petitioners-appellants.

David R. Minikel, Asst. Atty. Gen., Olympia, Wash., for respondent-appellee.

Before WRIGHT, PREGERSON, and FERGUSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Petitioners, a class of insanity acquittees, allege in this habeas proceeding that Washington's procedures for confinement and release of insanity acquittees are unconstitutional. They contend, first, that the disparity between the procedures for civil and criminal commitment denies them equal protection. Second, they contend that Washington's review and release procedures for insanity acquittees deny them due process.

In a carefully reasoned decision, the district court rejected both contentions and dismissed the petition. We affirm.

## I. Statutory Framework

When a defendant raises an insanity defense, the trier of fact must determine:

(1) Whether the state has proved beyond a reasonable doubt that the defendant committed the felonious act charged;

(2) Whether the defendant has shown by a preponderance of the evidence that he should be acquitted by reason of insanity existing at the time of the act charged;

(3) Whether the state has shown by a preponderance of the evidence that the defendant is a substantial danger to other persons unless kept under further control;

(4) Whether the state has shown by a preponderance of the evidence that the defendant presents a substantial likelihood of committing felonious acts, jeopardizing public safety or security unless kept under further control; and

(5) Whether the state has shown by a preponderance of the evidence that the best interests of the defendant and others require that the defendant be detained in

a state mental hospital rather than receive less restrictive treatment.

*See* Wash.Rev.Code §§ 10.77.030(2), .040.

One acquitted of a felony by reason of insanity will be committed if the trier of fact finds that he or she presents a danger to society and less restrictive alternatives are not in the best interests of society. Wash.Rev.Code § 10.77.110.

■ Insanity acquittees receive automatic review of their mental condition every six months. Wash.Rev.Code § 10.77.-140. This review is conducted in the hospital by health service professionals. Judicial review is discretionary, unless the hospital recommends release. The insanity acquittee may be confined for the maximum penal term of the crime charged. Prior release may occur only if the acquittee proves fitness by a preponderance of the evidence. *State v. Kolocotronis,* 27 Wash.App. 883, 620 P.2d 546 (1980). A court must approve release even if the hospital determines that the acquittee is fit for release. Wash.Rev. Code § 10.77.200.

■ Civil commitment procedures are somewhat different. Under Wash.Rev. Code § 71.05.150, a person may be civilly committed for an initial period of 72 hours if a mental health professional finds that the person, as a result of a mental disorder, presents a likelihood of serious harm to himself or others or is gravely disabled. Absent an emergency, a magistrate must make a finding of probable dangerousness before a summons may issue. *In re Harris,* 98 Wash.2d 276, 654 P.2d 109 (1982).

If the state decides that a further 14-day period of commitment is necessary, the court must hold a probable cause hearing. It must find by a preponderance of the evidence that the person presents a likelihood of serious harm to himself or others or is gravely disabled, and that treatment in a less restrictive setting is neither in the best interests of the civil committee nor of society. Wash.Rev.Code § 71.05.230–.240.

Finally, if the state petitions to continue the commitment, the confinement may be continued for a maximum of 30 days to allow time for a hearing. The state must establish the grounds for commitment by clear, cogent, and convincing evidence. Wash.Rev.Code § 71.05.310. The Washington Supreme Court has held that this standard is the civil equivalent of the beyond a reasonable doubt standard. *In re Levias,* 83 Wash.2d 253, 256, 517 P.2d 588, 590 (1973). If the state meets this burden, commitment continues for 90 days, when another hearing is required.

Thereafter, commitment hearings occur every 180 days unless the committee is released or waives the hearing. The state must show need for commitment beyond a reasonable doubt. Hospital staff may release a civil committee at any time, without judicial approval, upon finding that the committee no longer presents a likelihood of serious harm to others. Wash.Rev.Code § 71.05.330.

Civil commitments are of potentially unlimited duration, subject to automatic judicial review after each 180 day period of commitment. Wash.Rev.Code § 71.05.320.

II. *Equal Protection*

Petitioners contend that the disparity between the procedures for commitment and release of insanity and civil committees denies the former equal protection of the law. The argument centers on the partial overlap of the two groups. Both include persons committed in order to protect society, based on a finding of dangerousness. In either case, commitment is predicated, in part, on proof of a dangerous, overt act.

A. *Level of Scrutiny*

We consider first the level of judicial scrutiny to apply. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). Traditionally equal protection analysis involves one of two standards: strict scrutiny or rational basis.

■ Strict scrutiny does not apply to involuntary commitment classifications. The United States Supreme Court has heard equal protection challenges in three involuntary commitment cases and has applied

strict scrutiny in none. *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). Further, it has indicated in dicta that the rational basis test applies. *Jones v. United States,* —— U.S. ——, 103 S.Ct. 3043, 3048 n. 10, 77 L.Ed.2d 694 (1983).

■ Recent decisions indicate that the Court sometimes applies the rational basis test with "a sharper focus." *Craig v. Boren,* 429 U.S. 190, 210–11 n. *, 97 S.Ct. 451, 463–64 n. *, 50 L.Ed.2d 397 (1976) (Powell, J., concurring). *See also Cabell v. Chavez-Salido,* 454 U.S. 432, 439, 102 S.Ct. 735, 739, 70 L.Ed.2d 677 (1982); *Michael M. v. Superior Court of Sonoma County,* 450 U.S. 464, 468–69, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981). Under this heightened scrutiny, a classification must be substantially related to the achievement of important governmental objectives. *See, e.g., Craig v. Boren,* 429 U.S. at 197, 97 S.Ct. at 456 (1976).

In *Jackson, Humphrey,* and *Baxstrom,* the Court used rational basis language but invalidated the classification. This suggests that it applies the heightened rational basis test to classifications affecting involuntary commitment. *See Benham v. Edwards,* 678 F.2d 511, 515–16 n. 9 (5th Cir. 1982), *vacated on other grounds,* —— U.S. ——, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); Gunther, *The Supreme Court, 1971 Term—Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L.Rev. 1, 27, 31 (1972).

The district court found that the heightened scrutiny used in *Craig* is appropriate here. We agree. Nevertheless, we need not decide the appropriate standard because we find that the challenged classifications survive even heightened scrutiny.

B. *The State Does Not Violate Equal Protection by Providing Different Commitment Procedures for Civil Committees and Insanity Acquittees*

■ In *Jones v. United States,* the Court rejected a due process challenge to a District of Columbia statute that required automatic commitment of all persons acquitted of a crime by reason of insanity. It refused to equate criminal and civil commitments. It held that *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), which requires that civil commitments be based on clear and convincing evidence, does not extend to criminal commitments. *Jones,* 103 S.Ct. at 3051.

In a footnote, the Court indicated that equal protection requires the same result. It stated, "if the Due Process Clause does not require that an insanity acquittee be given the particular procedural safeguards provided in a civil-commitment hearing under *Addington,* then there necessarily is a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees." 103 S.Ct. at 3048 n. 10.

The petitioners contend that this case is distinguishable because the classes of civil committees and insanity acquittees overlap more in Washington than in the District of Columbia. Civil commitment in the District of Columbia is not based on proof of a specific, dangerous act. *See Jones v. United States,* 103 S.Ct. at 3046 n. 6. Because Washington law requires such proof for some committees, petitioners argue that virtually the only distinction between civil committees and insanity acquittees in Washington lies in the state's decision to prosecute some and seek civil commitment of others.

The overlap is not complete. Those subject to civil commitment for "grave disability", Wash.Rev.Code § 71.05.280(4), or who have committed acts constituting a felony but are incompetent to stand trial are not subject to commitment as insanity acquittees. Wash.Rev.Code §§ 10.77.060, .090.

The overlap appears with persons civilly committed based on proof of a specific, dangerous act and future dangerousness. Wash.Rev.Code § 71.05.280(1), (2). Petitioners contend that insanity acquittees are indistinguishable from those civil commit-

tees. They argue then that the state's decision to process some persons as insanity acquittees and some as civil committees violates equal protection.

But the "decision" on how to proceed arises from different state officials and, in the case of the insanity acquittee, from the defendant himself. These officials have different responsibilities, reflecting the different emphases of the statutes they are charged to enforce.

Mental health professionals initiate civil commitments based on a likelihood that the person will harm himself or others. Wash. Rev.Code § 71.05.150. Their purpose is to provide treatment for the mentally ill and to protect society from them.

■ In contrast, prosecuting attorneys decide to prosecute when they have probable cause to believe that the accused is guilty of a crime. Insanity is generally not a consideration for the prosecutor, unless or until the defendant brings his own sanity into question. A prosecutor or judge generally may not impose the insanity defense upon an unwilling defendant, *State v. Jones,* 99 Wash.2d 735, 664 P.2d 1216 (1983).

■ Once the defendant has raised the insanity issue, the primary interests of the state in committing the acquittee are protecting society, *In re Harris,* 94 Wash.2d 430, 436, 617 P.2d 739, 742 (1980).

In some aspects, the rights of insanity acquittees are superior because of our traditional concern for protecting the rights of criminal defendants against the state. A civil committee may be confined for up to 37 days before the state must prove the need for commitment by clear, cogent and convincing evidence. During this time, he is subjected to mandatory examination, evaluation, and treatment. Wash.Rev.Code § 71.05.210. In contrast, a criminal defendant may not be subjected to examination or treatment unless he puts his sanity in issue or the court doubts his competency to stand trial. Wash.Rev.Code § 10.77.060.

■ Even after the insanity defense is raised, the defendant receives protections as to examination and treatment that do not apply to civil committees. Criminal defendants may have counsel present at all examinations. Wash.Rev.Code § 10.77.020(4). The Fifth Amendment privilege against self-incrimination applies during the examination and may be asserted by counsel. *Id.*

Finally, the insanity acquittee has the full range of constitutional protections afforded the criminal defendant. While civil committees share some of these protections, such as the requirement of proof beyond a reasonable doubt, many others do not apply. *See Benham v. Edwards,* 678 F.2d at 537–38 (5th Cir.1982), *vacated,* —— U.S. ——, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983).

The differences in commitment procedures are substantially related to important governmental objectives. The class of insanity acquittees is composed of those committed by a different arm of the state for different reasons than civil committees. The different procedures are substantially related to the purposes of each statute and do not reflect discrimination against insanity acquittees. Our holding "accords with the widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." *Jones v. United States,* 103 S.Ct. at 3052–53 (1983).

### C. The Different Procedures for the Review and Release of Committees Do Not Deny Insanity Acquittees Equal Protection of the Laws

■ The differences between insanity acquittees and civil committees do not disappear once commitment occurs. The state's procedures are substantially related to the important government interests already identified.

The state provides periodic judicial review for civil committees and not for insanity acquittees. Civil commitments are of potentially unlimited duration, subject to automatic judicial review after each 180-day period of commitment. Wash.Rev.Code § 71.05.320. In continuing the committee's confinement, the State bears the burden of

proof beyond a reasonable doubt. Wash. Rev.Code § 71.05.310.

Insanity acquittees, on the other hand, cannot be confined longer than the maximum penal term for the crime charged. Wash.Rev.Code § 10.77.020(3). The legislature provided for semi-annual, non-judicial review of the mental condition of insanity acquittees. Wash.Rev.Code § 10.77.140. If the hospital staff recommends release, there is a judicial hearing. If the recommendation is not made, judicial review is discretionary. Wash.Rev.Code § 10.77.150. The differences in review procedure reflect justifiable distinctions regarding the treatment of each class.

Prior to the release of insanity acquittees the state requires a judicial hearing and proof of fitness for release by a preponderance of the evidence. The state has a substantial interest in avoiding premature release of insanity acquittees, who have committed acts constituting felonies and have been declared dangerous to society. Because "the insanity acquittal supports an inference of continuing mental illness," *Jones v. United States,* 103 S.Ct. at 3050, the state's interest in protecting society and the acquittee himself justifies placing the burden on insanity acquittees to show that they no longer present a danger. *See Powell v. Florida,* 579 F.2d 324, 333 (5th Cir. 1978). Moreover, because the defendant himself first raised and proved his insanity, fairness suggests that release should require his own showing of recovery rather than the state's showing of continued insanity.

### III. *Due Process*

■ To determine whether a procedure satisfies due process we balance: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest and the probable value of additional procedural safeguards; and (3) the government's interest including the function involved and the burdens that additional procedural requirements would place on the state. *Mathews*

*v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). We will find the statute unconstitutional only if, as a whole, it fails to furnish insanity acquittees with the elements of due process.

In *Jones v. United States,* the Court rejected a due process challenge to a District of Columbia statute that calls for automatic commitment of criminal defendants who successfully invoke the insanity defense. 103 S.Ct. at 3052. *Jones* however, precludes a due process challenge to the Washington commitment procedures. *Jones* does not directly address procedures for review and release of insanity acquittees. *See* 103 S.Ct. at 3048 n. 11. Nevertheless, the rationale of *Jones* compels us to reject this due process attack.

Petitioners contend that Washington's failure to provide automatic, periodic judicial review of confinement violates due process. They also challenge the requirement that the insanity acquittee prove fitness for release at a judicial hearing by a preponderance of the evidence.

The petitioners have a significant liberty interest affected by these review and release procedures. *See Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). They have an interest in avoiding unnecessary confinement. This interest is protected adequately, however, by Wash.Rev.Code § 10.77.140, which requires regular examination of insanity acquittees by health professionals. As the Supreme Court has stated:

Thus [in the case of medical decisions], the staff physician will suffice, so long as he or she is free to evaluate independently [the patient's] mental or emotional condition and need for treatment.

*Parham v. J.R.,* 442 U.S. 584, 607, 99 S.Ct. 2493, 2506–07, 61 L.Ed.2d 101 (1979) (citations omitted).

 Due process does not always require an adversarial hearing. *Id.* at 608 n. 16, 99 S.Ct. at 2507 n. 16. It also does not require that the independent decision maker come from outside the hospital administration. *Vitek,* 445 U.S. at 495–96, 100 S.Ct. at 1264–65; *Doe v. Gallinot,* 657 F.2d 1017, 1024 (9th Cir.1981). Washington procedures adequately protect the insanity acquittee's interest in regular review of his continued confinement. The exceptional case will receive judicial review under the court's discretionary power or may be the subject of habeas relief.

 The petitioners' due process challenge to the requirement that an insanity acquittee demonstrate fitness for release by a preponderance of the evidence fails also. While the insanity acquittee has a strong interest in avoiding erroneous confinement, the state has a substantial interest in preventing the premature release of persons who have already proved their dangerousness to society.

An insanity acquittee may not be confined under Wash.Rev.Code Chapter 10.77 for a period longer than the maximum penal term of the crime charged. Wash.Rev. Code § 10.77.020(3); *In re Kolocotronis,* 99 Wash.2d 147, 660 P.2d 731 (1983). Confinement after this term may occur only under the normal civil commitment provisions. The maximum term is based, in part, on the dangerousness of the insanity acquittee's prior act. *See id.* at 152–53, 660 P.2d at 736. It is reasonable for the state to require that prior release occur only if the acquittee convinces a court that he no longer presents a danger to society. *See Dorsey v. Solomon,* 604 F.2d 271, 276 (4th Cir.1979).

IV. *Conclusion*

The Washington procedures for the commitment and release of insanity acquittees violate neither the equal protection nor the due process clauses of the Constitution.

Affirmed.