John Brown MAYFIELD, Petitioner,

v.

William FORD, Respondent.

No. CV 85–L–688.

United States District Court,
D. Nebraska.

Jan. 8, 1987.

Duane L. Nelson, Lincoln, Neb., (Court-appointed), for petitioner.

Robert M. Spire, Atty. Gen. and Jill Gradwohl, Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM

LAY, Circuit Judge, Sitting by Special Designation.

On December 2, 1985, John Mayfield, a mental patient at the Lincoln Regional Center in Lincoln, Nebraska, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 (1982). Mayfield has been a patient at the center since 1977 when he was acquitted of charges of first degree sexual assault, robbery, and auto theft by reason of his insanity at the time he committed the acts involved. As grounds for his petition, Mayfield alleges: (1) the statute under which he is being held, as it is applied to him, is a violation of the ex post facto clause of Article 1, Section 10, of the United States Constitution; (2) the statute deprives him of his right to equal protection under the Fourteenth Amendment; (3) the statute was passed in violation of the Nebraska Constitution and therefore denies him his federal due process rights; (4) he was denied proper procedural rights at his trial; and (5) he is not now mentally ill and dangerous nor is he being adequately treated and he therefore should be released. For the following reasons, Mayfield's petition is denied.

## Background

On May 18, 1977, Mayfield was arrested and charged with first degree criminal sexual conduct, robbery, and auto theft. On October 3, 1977, he was tried without a jury in Douglas County District Court and found not guilty of any of the charges by reason of his insanity at the time he committed the acts alleged. The court confined Mayfield in the Douglas County Hospital pending commitment proceedings as certified to the Douglas County Board of Mental Health. On October 31, 1977, the board found Mayfield to be mentally ill and he was committed to the Lincoln Regional Center.

In early 1981, the Nebraska Legislature passed L.B. 213, 1981 Neb.Laws 213, § 6 (codified at Neb.Rev.Stat. §§ 29–3701 to –3706 (Supp.1984)), which provided special procedures for handling persons acquitted of crimes on grounds of insanity. The new law provides that where a defendant is acquitted on grounds of insanity, the court shall retain jurisdiction over that defendant for purposes of determining if and when the defendant can be released. Neb.Rev. Stat. § 29–3701 (1984). The law provides that in cases where a person acquitted has been committed before May 29, 1981, the effective date of the new law, the court which tried the acquitted person shall obtain jurisdiction over him or her for purposes of reviewing the commitment. · *Id.* § 29–3705. Under the civil commitment statute, which was unchanged by L.B. 213, the hospital staff, not the court, decides

what treatment a patient will receive and if and when a patient will be released. *See* Neb.Rev.Stat. §§ 83–1001 to –1081 (1979). Before 1981, acquitted persons were dealt with pursuant to the civil act.

On June 30, 1981, the Douglas County Attorney petitioned for a hearing before the state district court concerning Mayfield's further commitment. The court which tried Mayfield held a hearing on his commitment status on January 7, 1982, and a week later, on the advice of the psychiatrist in charge of patient care at the Lincoln Regional Center, entered an order finding clear and convincing evidence that Mayfield was then mentally ill and dangerous to others by reason of his mental illness and that he would remain dangerous to others in the foreseeable future. The court ordered that Mayfield be confined to the security service unit of the center.

On Mayfield's appeal, the Nebraska Supreme Court affirmed, holding that notwithstanding the conflicting medical opinions as to his mental status, there was clear and convincing evidence that Mayfield was mentally ill and dangerous at the time of the hearing. *State v. Mayfield,* 212 Neb. 724, 726, 325 N.W.2d 162, 164 (1982). The court also held, "The remaining assignments of error are without merit." *Id.* There is no indication on the record available to this court what those assignments of error were. On annual reviews of Mayfield's status, the district court has ordered that he remain institutionalized.

On September 13, 1984, pursuant to Neb. Rev.Stat. §§ 29–2801 to –2824 (1979), Mayfield filed a petition for writ of habeas corpus in Nebraska District Court. The petition was denied on January 22, 1985, and Mayfield appealed. The Nebraska Supreme Court affirmed, holding that Mayfield is not entitled to relief in the form of habeas corpus since he was trying to use that type of relief as a substitute for appeal. *Mayfield v. Hartmann,* 221 Neb. 122, 123, 375 N.W.2d 146, 148 (1985). It observed: "Mayfield is not without a remedy. There are, obviously, a host of ave-

nues available to him to test the various matters which he now raises." *Id.,* 375 N.W.2d at 149. The court, however, gives no indication of what those available avenues are.

## Discussion

The first issue raised by the state is that Mayfield has failed to exhaust his state remedies. In Mayfield's appeal from the 1981 commitment order, the Nebraska Supreme Court discussed only the issue of whether there was clear and convincing evidence available to the district court upon which it could base its commitment order. *State v. Mayfield,* 212 Neb. 724, 325 N.W.2d 162 (1982). The court summarily dismissed the remaining assignments of error, but did not indicate what those assignments were. On Mayfield's appeal of his state habeas corpus petition, the Nebraska Supreme Court held that habeas corpus was not the proper vehicle in which to raise the constitutional issues at question here, indicating that Mayfield has a host of other remedies available to him. *Mayfield v. Hartmann,* 221 Neb. 122, 375 N.W.2d 146 (1985).

▪ The state's brief assumes that because the Supreme Court did not address the issues now raised, petitioner did not adequately present his claims. This is not the test of exhaustion. To exhaust his state court remedies, all a petitioner must do is fairly present his constitutional claims before the state court. *Anderson v. Frey,* 715 F.2d 1304, 1305 n. 2 (8th Cir.1983), *cert. denied,* 464 U.S. 1057, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984). Assuming petitioner did present these claims, as he now asserts, the Nebraska court had the opportunity to review them. The state suggests he should have proceeded by declaratory judgment or some other remedy. If that is the rule in Nebraska, so be it. But, it has long been established by the Supreme Court of the United States that a petitioner does not have to participate in a guessing game as to whether the chosen form of state action was the proper one.[1] *See Marino v. Ra-*

---

1. In *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), the Court held

that it was error to dismiss the petition of Missouri prisoners, who challenged living condi-

*gen,* 332 U.S. 561, 565–70, 68 S.Ct. 240, 242–45, 92 L.Ed. 170 (1947) (Rutledge, J., concurring); *Ashby v. Wyrick,* 693 F.2d 789, 795–96 (8th Cir.1982) (Lay, C.J., concurring). Once the petitioner fairly presents the constitutional issues to the state courts, he satisfies his obligation to exhaust his state remedies. *See, e.g., Tyler v. Wyrick,* 730 F.2d 1209, 1210 (8th Cir.) (per curiam), *cert. denied,* 469 U.S. 838, 105 S.Ct. 138, 83 L.Ed.2d 78 (1984). This does not mean that the state court must expressly rule on the merits of the issues raised. *Eaton v. Wyrick,* 528 F.2d 477, 480 (8th Cir.1975). It simply means that the state court must have been given one full and fair opportunity to decide the constitutional issue. *Anderson,* 715 F.2d at 1305 n. 2. If the factual matters necessary for determination of the issue appear on the face of the trial record, and the petitioner cites in his brief a provision of the federal constitution or a case addressing the constitutional basis of the claim, or makes a discernable reference to a federal constitutional right, he satisfies the fair presentation requirement. *See Graham v. Solem,* 728 F.2d 1533, 1535–36 (8th Cir.), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); *Lenza v. Wyrick,* 665 F.2d 804, 808 (8th Cir.1981); *Eaton,* 528 F.2d at 480. Certainly, if a petitioner has been illegally confined under a statute which is unconstitutional, he should be able to attack his commitment by a petition for writ of habeas corpus. *See e.g., Royal v. Superior Court,* 531 F.2d 1084, 1086–87 (1st Cir.), *cert. denied,* 429 U.S. 867, 97 S.Ct. 178, 50 L.Ed.2d 147 (1976). Assuming petitioner did not attack his commit-

ment in the state court, as reflected in the appellate briefs (and it would appear that he did not fully assert all issues), under Nebraska rules mandating a procedural bar where an appeal fails to assert all claims, he could not later resort to state post conviction remedies. *State v. Pope,* 218 Neb. 361, 362, 355 N.W.2d 216, 217 (1984). Thus, as a practical matter, petitioner has no available means to move in state court to set aside his confinement. We therefore hold that petitioner has adequately exhausted all claims because he either (1) has already done so; or (2) if he has not done so, under Nebraska law, is procedurally barred in any event from proceeding further.

If petitioner failed to raise the procedural claims in the state courts, he must meet the cause and prejudice requirements before this court can pass on his claims. This court accepts petitioner's assertion, which is denied but not refuted by the state, that he brought the constitutional claims before the Nebraska Supreme Court and the court did not pass on them. Thus, petitioner contends he has exhausted his state court remedies, and the state has failed to show that he has not. We therefore move to the merits of the claims.

### 1. Ex Post Facto Law

■ Mayfield first argues that his petition should be granted since Neb.Rev.Stat. §§ 29–3701 to –3706, as it is applied to him, operates as an ex post facto law prohibited by Article 1, Section 10, of the United States Constitution. Mayfield's challenge

---

tions and disciplinary measures, on grounds that the prisoners failed to pursue "any of a number of possible alternatives to state habeas including 'a suit for injunction, a writ of prohibition, or mandamus or a declaratory judgment in the state courts,' or perhaps other relief under the State Administrative Procedure Act." *Id.* at 249–50, 92 S.Ct. at 408 (citing *Wilwording v. Swenson,* 439 F.2d 1331, 1336 (8th Cir.1971). In so holding, the court observed:

> Section 2254 does not erect insuperable or successive barriers to the invocation of federal habeas corpus. The exhaustion requirement is merely an accommodation of our federal system designed to give the State an initial "opportunity to pass upon and correct"

alleged violations of its prisoners' federal rights. Petitioners are not required to file "repetitious applications" in the state courts. Nor does the mere possibility of success in additional proceedings bar federal relief. Whether the State would have heard petitioners' claims in any of the suggested alternative proceedings is a matter of conjecture; certainly no available procedure was indicated by the State Supreme Court in earlier cases.... In these circumstances § 2254 did not require petitioners to pursue the suggested alternatives as a prerequisite to taking their claims to federal court.

*Id.* 404 U.S. at 250, 92 S.Ct. at 409 (citations omitted).

must be rejected. An ex post facto law is one which "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Cummings v. Missouri,* 71 U.S. (4 Wall) 277, 325–26, 18 L.Ed. 356 (1867) (quoted in *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). The purpose of the prohibition is to give fair warning of the effects of legislative enactments and to prevent arbitrary or vindictive legislation. *Weaver,* 450 U.S. at 28–29, 101 S.Ct. at 963–64; *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). Accordingly, the Supreme Court requires proof of two critical elements before it will find an ex post facto violation: (1) the law must be retrospective, that is, it must apply to events occurring before its enactment; and (2) it must disadvantage the offender making the challenge. *Weaver,* 450 U.S. at 29, 101 S.Ct. at 964; *Maggard v. Wyrick,* 800 F.2d 195, 197 (8th Cir.1986).[2] In applying the second element, the Court has held that a procedural change is not ex post facto. *Dobbert,* 432 U.S. at 293, 97 S.Ct. at 2298. A procedural change is one which does not "increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

Sections 29–3701 to –3706 merely impose procedural changes. Nothing in the statute gives any indication that a patient's commitment will be increased. The only change is that the district court now has the power to order Mayfield's release or his continued commitment. It does not follow that because of this, the patient's commitment will be longer. In fact, it could just as easily be shortened since the court has the power to oversee all facets of the patient's commitment and can correct any injustices which may be imposed on him at the institution in which he is committed.

## 2. Equal Protection

Mayfield claims that to differentiate between him, a person who has been acquitted, and individuals not charged with crimes and committed under the civil commitment statute, deprives him of equal protection under the law as guaranteed by the fourteenth amendment. Mayfield is correct in his observation that those committed in civil proceedings and those committed following acquittal by reason of insanity are treated differently under Nebraska law. However, this differing treatment implicates the fourteenth amendment only if there is no rational basis for the legislature to have made that distinction.[3] A rational basis exists here. The fundamental difference between persons committed in civil proceedings and those committed following an acquittal due to insanity is that the latter group is subject to the jurisdiction of the trial court. The state has a legitimate interest in retaining jurisdiction over a person acquitted of criminal charges because of his violation of the law, reflecting his prior anti-social conduct that could recur unless the proper treatment is given. *See Powell v. Florida,* 579 F.2d 324, 333 (5th Cir.1978). As the court observed in *Hickey v. Morris,* 722 F.2d 543 (9th Cir.1983), "[t]he state has a substantial interest in avoiding premature release of insanity acquittees, who have committed acts constituting felonies and have been declared dangerous to society." *Id.* at 548. True, a person civilly committed is not immune from criminal activity, but a person acquitted by reason of insanity possesses a potential for danger already established by prior

---

2. Although the challenged statute must be considered in light of the facts of the case before the court, there has been a strong suggestion by the Supreme Court that the focus must be on the overall effect of a change in the law, rather than on the actual result of the change in a particular case. *See Yamamoto v. United States Parole Comm'n,* 794 F.2d 1295, 1304 n. 7 (8th Cir.1986) (Lay, C.J., dissenting) (citing *Dobbert,* 432 U.S. at 300, 97 S.Ct. at 2302)).

3. There is some case law suggesting that the level of scrutiny given to cases involving the mentally impaired is more properly defined as a rational basis with "a sharper focus." *Hickey v. Morris,* 722 F.2d 543, 546 (9th Cir.1983) (and cases cited therein). Under either analysis, however, the Nebraska statute passes constitutional muster.

commission of a crime. Thus, the added precaution of district court jurisdiction is warranted.[4]

### 3. Substantive Due Process

 Mayfield contends that his commitment violates due process since L.B. 213 was passed in violation of the Nebraska Constitution. He claims that the bill's title did not reflect its content which is a violation of Neb. Const. art. III, § 14. He argues that the state's failure to follow its own procedures violated his federal due process rights. However, federal courts in a habeas corpus proceeding have no jurisdiction to consider challenges based upon state law. *Morrow v. Wyrick,* 646 F.2d 1229, 1234 (8th Cir.), *cert. denied,* 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981). Thus, this court cannot consider Mayfield's third contention.

### 4. Procedural Due Process

 This court has examined the state's brief from Mayfield's 1982 appeal. It does not appear that Mayfield raised the procedural due process issues asserted here, namely, that he was never properly informed of the nature and potential consequences of a plea of not guilty by reason of insanity. Technically, Mayfield has not properly ·exhausted his state court remedies as to this issue. However, under Nebraska's well-established rule that an issue not raised on appeal cannot subsequently be raised in a post conviction proceeding, *see Pope,* 355 N.W.2d at 217, it is clear that if he were to try to raise that issue now, the claim would be dismissed. Thus, further attempts to raise the issue in the state courts would be futile. Federal courts do not defer action on habeas corpus petitions when there is no reasonable probability that any relief sought in the state courts will actually be available. *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam); *Powell v. Wyrick,* 657 F.2d 222, 224 (8th Cir.1981).

Nevertheless, claims which are procedurally barred in state court, as is this one, will only be reviewed by a federal court upon a habeas corpus petition if the petitioner demonstrates adequate cause to excuse his failure to properly raise the claim in state court and actual prejudice to his case because of the state court's failure to address his claim. *Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This court has reviewed the trial transcript and finds that Mayfield has shown no cause for his failure to raise this issue. Thus, his procedural due process challenge must be rejected.

### 5. Present Mental Condition

 Mayfield finally contends that he is not presently mentally ill and dangerous and that he is not being adequately treated. This court, he argues, should order his release. Mayfield remains under the jurisdiction of the state court and he may request a hearing before that court at any time if he possesses additional evidence bearing on his present mental condition. *See* Neb.Rev.Stat. § 29–3703(1) (Supp. 1984).

IT IS THEREFORE ORDERED that Mayfield's petition for writ of habeas corpus is denied.

---

**4.** Mayfield also alleges that he is denied equal protection by the legislature's use of dangerousness in the "foreseeable future" in acquittee commitment cases as opposed to the "near future" in civil commitments. There is no legal significance to this differentiation and it therefore involves no denial of equal protection.