Melvin R. HARRIS; Roy R. Miller, Appellants,

v.

Dr. Gerald J. BALLONE, Director of Central State Hospital; and Leo Kirven, Jr., Commissioner, Virginia Department of Mental Health and Mental Retardation, Appellees.

No. 81–6863.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1982.

Decided June 10, 1982.

Rehearing Denied July 26, 1982.

Leonard S. Rubenstein, Alexandria, Va. (Janis L. McDonald, Hirschkop & Grad, P. C., Alexandria, Va., Margaret Ferguson, Petersburg Legal Aid Society, Petersburg, Va., on brief), for appellants.

Patrick A. O'Hare, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen., of Virginia, Richmond, Va., on brief), for appellees.

Before WINTER, Chief Judge, and ERVIN and CHAPMAN, Circuit Judges.

WINTER, Chief Judge:

When criminal defendants in Virginia are acquitted by reason of insanity, they are subject to commitment in a mental hospital. In this case plaintiff contends that Virginia's scheme for the commitment of insanity acquittees is unconstitutional in a number of respects. The district court entered judgment against the plaintiff on his individual claims, declined to certify the suit as a class action, and dismissed the amended complaint. With regard to the individual claims, we affirm. With regard to the class claims, we affirm in part and reverse in part, remanding so that a proper representative may come forward to prosecute certain of the claims.

## I.

The important features of Virginia's scheme for the commitment of insanity acquittees are as follows. *See* Va.Code § 19.2–181 (1981 Cumm.Supp.). After a criminal defendant is acquitted by reason of insanity, he is examined by a panel of three experts and a judicial hearing is held. If the judge is "satisfied" that the insanity acquittee is either insane or dangerous, he commits the insanity acquittee to a mental hospital. Once the insanity acquittee is committed, he may apply for his release only once a year, starting six months after his commitment, although the hospital where he is committed may apply for his release as often as it wishes. When either the insanity acquittee or the hospital applies for his release, the insanity acquittee is examined by at least two experts and another judicial hearing is held. The statute explicitly assigns the burden of proof in this release hearing to the insanity acquittee. If the judge is "satisfied" that the insanity acquittee is no longer insane or dangerous, he may order that the insanity acquittee be released, but he is empowered

to continue the insanity acquittee's confinement if he so chooses.

Prior to July 1980, Virginia's scheme for the commitment of insanity acquittees was different from the current scheme in that it provided for no pre-commitment hearing. *See* Va.Code § 19.2–181 (1975). Virginia changed that aspect of its scheme in response to *Dorsey v. Solomon*, 604 F.2d 271 (4 Cir. 1979). There, we invalidated Maryland's scheme for the commitment of insanity acquittees because it both permitted insanity acquittees to be committed without a hearing and imposed the burden of proof on them in all release hearings.

Virginia's scheme for the commitment of insanity acquittees is different in a number of respects from its scheme for the commitment of persons other than insanity acquittees. *See* Va.Code §§ 37.1–67.1 to 67.6 (1981 Cumm.Supp.); Va.Code § 37.1–103 (1976). A person other than an insanity acquittee may be committed only if the factfinder determines that there is clear and convincing evidence that the person is insane *and* dangerous. A person other than an insanity acquittee is given the right to a jury trial at the pre-commitment stage. A committed person other than an insanity acquittee is automatically released after 180 days; if the state wishes to confine him for a longer period, it must initiate a fresh commitment proceeding every 180 days. Finally, before the 180-day period has run, committed persons other than insanity acquittees have an unlimited right to seek release.

In 1979, in a Virginia court, Melvin Harris was found not guilty of murder and malicious wounding by reason of insanity. The three experts who subsequently examined him reported to the court that he was not insane but that he was dangerous. In December 1979, he was committed to a mental hospital without a hearing. In March 1980, he brought the present suit pro se, alleging that it had been unconstitutional for the government to commit him without giving him a hearing. Later, he applied under the Virginia statute for his release. As a result of that application, Harris was reexamined by the same three experts who had examined him the year before. They again concluded that Harris was not insane, but two of the three again concluded that Harris was dangerous. A release hearing was held in September 1980. At the conclusion of the hearing, the judge determined that Harris was dangerous and denied him his release. Three months later, Harris submitted an amended complaint to the district court, which was ordered filed on March 4, 1981.

The amended complaint asserts that Virginia's scheme for the commitment of insanity acquittees is unconstitutional in eight respects: (1) It places the burden of proof on the insanity acquittee in both the pre-commitment hearing and the release hearings; (2) It does not guarantee the insanity acquittee the right to receive advance notice of hearings, to present evidence, or to cross-examine the experts;[1] (3) It allows an insanity acquittee to be committed merely because the judge is "satisfied" that the insanity acquittee qualifies for commitment, rather than because there is clear and convincing evidence that the insanity acquittee qualifies for commitment; (4) It provides that the insanity acquittee qualifies for commitment if he is insane *or* dangerous, rather than insane *and* dangerous; (5) It allows a committed insanity acquittee to initiate a proceeding for his release only once a year; (6) It empowers the judge at a release hearing to continue the insanity acquittee's confinement even if

---

1. While the Virginia Code does not explicitly guarantee these rights to insanity acquittees, neither does it explicitly deny them. The real gist of this claim must be that, in the face of a silent statute, the government is denying these things to insanity acquittees in practice.

   Originally, the plaintiff also challenged the Virginia scheme on the ground that it does not guarantee insanity acquittees the right to appointed counsel. However, during oral argument before us, plaintiff's counsel conceded that that right is guaranteed to insanity acquittees by Va.Code § 19.2–182(a) (1975). It is possible, of course, that the government reads this provision implicitly to guarantee all of the other procedural rights covered by Harris's second claim.

he determines that the insanity acquittee is no longer insane or dangerous; (7) It does not permit the insanity acquittee a jury trial at the pre-commitment stage; and (8) It does not provide for automatic release after 180 days. Harris claims that each of these features of Virginia's scheme is unconstitutional under the due process clause, the equal protection clause, or both.

## II.

The district court concluded that none of the eight claims had merit as an individual claim brought on Harris's behalf. We address them seriatim.

◼ The district court rejected the first two claims because it found, as a matter of fact, that in connection with Harris's September 1980 release hearing, the state assumed the burden of proof, provided Harris with advance notice, and allowed Harris to present evidence and cross-examine the experts.[2] Before us, Harris does not seriously question the correctness of those findings of fact. But in any event, we do not think that the findings were clearly erroneous, so we agree with the district court that Harris does not have standing to press the first two claims as individual claims.

◼ As for the third claim, we think that the requirement that the judge be "satisfied" that the insanity acquittee qualifies for commitment invokes at least the preponderance-of-the-evidence standard, and we think that the use of that standard is constitutionally permissible. The clear-and-convincing-evidence standard is required for the commitment of persons other than insanity acquittees, see Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), but we think that the present situation is distinguishable because an insanity acquittee has already been shown beyond a reasonable doubt to have committed at least

one dangerous act, accord Warren v. Harvey, 632 F.2d 925 (2 Cir.), cert. denied, 449 U.S. 902, 101 S.Ct. 273, 66 L.Ed.2d 133 (1980).

◼ As for the fourth claim, it is established that a person may not be incarcerated solely because he is insane (at least in the absence of any showing that an involuntary confinement is necessary to ensure his own survival or safety or to alleviate or cure his illness), see O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), but we face the different question of whether a person may be incarcerated solely because he is dangerous. We hold that it is not a denial of due process for a person who has committed a criminal act to be incarcerated as long as he is considered dangerous. Nor do we think that this aspect of Virginia's scheme denies equal protection because a different standard (i.e., insane and dangerous) is used for persons other than insanity acquittees. Again, we think that the fact that an insanity acquittee has already been shown beyond a reasonable doubt to have committed at least one dangerous act justifies the distinction Virginia has drawn. See United States v. Ecker, 543 F.2d 178 (D.C.Cir.1976), cert. denied, 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977) (upholding the use of a different standard for determining if insanity acquittees should remain committed than is used for other committed persons).

◼ In his fifth claim, Harris asserts that the one-per-year restriction on applications for a release order denies due process because it creates the possibility that an insanity acquittee will remain committed for almost a year after the justification for his commitment has ceased to exist. We think that the force of this argument is substantially diluted by the fact that the hospital

2. The plaintiff denigrates these actions as atypical of what the government does in other cases involving insanity acquittees. Nothing in the record as it currently stands, however, indicates that since Virginia altered its scheme in July 1980, the state has acted otherwise in connection with any pre-commitment hearing, or in connection with any release hearing for an insanity acquittee who was committed prior to July 1980 and who thus did not receive a pre-commitment hearing. We do not rule out the possibility, of course, that if the district court reaches the merits of the second claim on remand, the named plaintiff could demonstrate that Virginia denies these procedural rights to some insanity acquittees.

where the insanity acquittee is committed is free to apply for his release as often as it wishes. *See Benham v. Edwards,* 501 F.Supp. 1050, 1073 (N.D.Geo.1980) (striking down a restriction on the frequency of release requests by the hospital while apparently approving a restriction on the frequency of release requests by the committed insanity acquittee). Nor do we think that the one-per-year rule is unconstitutional under the equal protection clause because no similar restriction is imposed on committed persons other than insanity acquittees. The obvious rationale for this restriction is to encourage the patient who has demonstrated dangerousness to cooperate with the treating physicians in curing his ills, and we think that the Virginia legislature could rationally have distinguished between insanity acquittees and other committed persons in evaluating the wisdom of imposing such a restriction.

■ The district court rejected the sixth claim because at Harris's release hearing, the judge determined that Harris was dangerous. We agree that Harris therefore does not have standing to press the sixth claim as an individual claim.[3]

■ Thus we are brought to the last two claims. The aspects of Virginia's scheme here at issue—the denial of a jury trial at the pre-commitment stage and the denial of automatic release after 180 days—are clearly not unconstitutional as denying due process, but Harris argues that the distinctions Virginia has drawn here between insanity acquittees and other persons deny equal protection of the laws. Again, we disagree. We think that the fact that an insanity acquittee has already been shown beyond a reasonable doubt to have committed at least one dangerous act provides a rational basis for the distinctions drawn here by the Virginia legislature. *Cf. United States v. Ecker, supra* (upholding the District of Columbia's scheme for the commitment of insani-

ty acquittees even though insanity acquittees could be released only if a court approved, while other committed persons could be released by the hospital acting alone).

In summary, we hold that it was proper for the district court to enter judgment against the plaintiff on his individual claims.

### III.

The amended complaint submitted to the district court in December 1980 included a request for class certification, and a month later Harris's counsel made the court aware that he intended to file a motion for class certification if the court allowed the amended complaint to be filed. On March 4, 1981, the district court entered an order allowing the amended complaint to be filed. The order concluded:

> The request for certification of this action as a class action, which is included in the Complaint, is DENIED because the record as it stands does not demonstrate that such certification is appropriate under Rule 23 of the Federal Rules of Civil Procedure. Finally, because the record is insufficient for a disposition of this matter, the plaintiffs and the defendants are DIRECTED to submit any additional motions, documents or affidavits presently available in support of their respective positions within thirty (30) days of the date of this Order.

The plaintiff subsequently conducted discovery on the class certification question and filed a motion for class certification, and both sides briefed the question. On September 8, 1981, the district court entered the order in which it dismissed the entire suit. In summarizing the proceedings which had occurred to date, the order stated: "The [March 4] Order denied, however, the plaintiff's request to certify the action as a class action under Rule 23."

---

**3.** At one point, an insanity acquittee whose confinement had continued after it was determined at a release hearing that he was neither insane nor dangerous was joined as a named plaintiff. He was dismissed from the case, however, after he escaped from the mental hospital where he was confined. The decision to dismiss him from the case has not been challenged on appeal.

The order in no way acknowledged the post-March 4 motion for class certification.

 On appeal, the parties have disagreed about when, if at all, the district court definitively decided the class certification question. We find it unnecessary to take a position in that dispute, because in any event our resolution of the case would be the same. As for the claims (numbers three through five, seven and eight) that we have rejected on the ground that Virginia is acting within constitutional limits, it would be a pointless waste of judicial resources to remand the case for certification of a class or classes. In essence, we have already decided that no one is entitled to relief. On the other hand, we have rejected three claims (numbers one, two and six) for reasons peculiar to Harris. In the absence of any explanation from the district court, we are unable to say that it was a proper exercise of discretion for the district court to decline to certify a class or classes of those allegedly harmed by these three aspects of Virginia's scheme. We therefore remand the case for further proceedings.

Since it has been determined that Harris had not in fact been harmed by these three aspects of Virginia's scheme at the time he first asserted that they were unconstitutional, he could not serve as the representative of the class or classes on remand. *See East Texas Motor Freight System, Inc. v. Rodriquez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *International Woodworkers v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4 Cir. 1981); *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4 Cir. 1978); *Cox v. Babcock & Wilcox Co.*, 471

F.2d 13, 16 (4 Cir. 1972).[4] Therefore, the district court need take no action until a proper representative comes forth. If none comes forth within a reasonable time, the district court should again dismiss the case. If a proper representative does come forth, the district court should reconsider the class certification question as regards the first, second and sixth claims; and if the district court concludes to certify a class or classes, it should decide the merits.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

---

4. Harris would not necessarily lose eligibility as a class representative if he had in fact been harmed by these three aspects of Virginia's scheme at the time he first asserted that they were unconstitutional, but his claims had been mooted by a subsequent change in circumstances. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). *Geraghty* has been followed by the Third Circuit in cases like the present one. *See Mazus v. Department of Transportation*, 629 F.2d 870 (3 Cir. 1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *Alexander v. Gino's, Inc.*, 621 F.2d

71 (3 Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). The Third Circuit apparently would limit the reach of *Rodriquez* to cases where the named plaintiff failed to move for class certification before it was determined that he had never been harmed by the practice he was challenging. *Cf. Armour v. City of Anniston*, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 774 (1980) (granting certiorari and remanding a case like the present one for reconsideration in light of *Geraghty*); *Satterwhite v. City of Greenville*, 445 U.S. 940, 100 S.Ct. 1334, 62 L.Ed.2d 773 (1980) (same).