**Herman FRANCOIS,**
**Petitioner–Appellee/Cross–Appellant,**

**v.**

**Murray HENDERSON, et al.,**
**Respondent–Appellant/Cross–Appellee.**

**No. 87–3219.**

United States Court of Appeals,
Fifth Circuit.

July 26, 1988.

Hammond Scott, Patricia I. Edwards, Asst. Dist. Attys., Michael E. McMahon, Chief, Appellate Section, New Orleans, La., for respondent-appellant/cross-appellee.

Clay J. Calhoun, Jr., New Orleans, La., for petitioner-appellee/cross-appellant.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Today's opinion occasions a revisiting of our decision in *Jackson v. Foti*, 670 F.2d 516 (5th Cir.1982), in which we upheld as constitutional the provisions of Louisiana law relating to the confinement in mental institutions of persons acquitted of crimes by reason of insanity. Although, as discussed herein, a recent change in Louisiana law has removed the provisions involving insanity-acquittees from the constitutional umbrella raised in *Jackson v. Foti*, we are not now obliged to hold that the present Louisiana procedures violate the due process and equal protection clauses of the fourteenth amendment. The disposition of this appeal permits us to defer that ruling until another day.

The State of Louisiana, through the appropriate official, appeals the grant of habeas relief to Herman Francois. 28 U.S.C. § 2254. The writ directs his discharge from the Feliciana Forensic Facility, the maximum security Forensic Unit of the East Louisiana State Hospital at Jackson, Louisiana, a mental institution, in accordance with a carefully-phased program. The state contends that the case should be remanded to the state court for consideration of what it characterizes as new evidence not previously considered by that court. Finding no merit in the state's contention, and concluding that the challenged judgment is fully supported by the facts and law, we affirm the judgment of the magistrate.

*Background*

On December 26, 1978, Francois was at a social gathering in New Orleans when he shot and killed a man he mistakenly believed was attacking him. Francois shot the victim with a revolver he legally carried in connection with his job as a security guard. A few weeks prior to the homicide, Francois had been in an automobile accident in which he sustained head injuries, was rendered unconscious, and was hospitalized. Francois had no prior criminal record, and the instant tragedy was the first and only time he was known to direct violence towards anyone, including himself.

Charged with first-degree murder, Francois was found guilty by a jury and was sentenced to life imprisonment. The district judge concluded that Francois had not been competent to stand trial, set aside the conviction, and, on May 25, 1979, the court dispatched Francois to Feliciana Forensic for treatment. For nine months Francois received psychotropic drug therapy, involving substantial doses of anti-psychotic medication. He was then found competent to stand trial and was returned to the parish jail for that purpose.

On retrial, in September 1980, the jury returned a verdict of not guilty by reason of insanity. That same day, without any further proceedings or formality, the state trial judge committed Francois to Feliciana Forensic. Francois was confined there continuously from September 30, 1980 to the time of the hearing herein.

Francois was diagnosed as psychotic at the time of the offense on December 26, 1978. Since completion of the nine months of therapy in 1979–80, Francois has exhibited no abnormal or psychotic symptoms, and has evidenced no violent behavior. He has been a model patient, demonstrating good demeanor and grooming, and normal, responsible actions and reactions. Since 1980 he has received no psychotropic medication of any kind. He has been a trustee and courier at the institution, and has been allowed to reside in Bienville House, a fenceless minimum-security building over two miles from the main facilities.

There was an unusual turn of events at the magistrate's hearing. C. Murray Henderson, the chief executive officer of Feliciana Forensic, and the named defendant herein, testified on behalf of Francois. Henderson has served previously as Commissioner of Corrections for the State of Tennessee and Warden of the Louisiana State Penitentiary. All of his distinguished career, spanning three decades, has been in the field of penology and corrections.[1] He was particularly knowledgeable about Francois, whom he saw almost daily. Francois worked as a courier in Henderson's office and performed housekeeping tasks. Henderson testified that Francois had "gotten along unusually well with both staff and other patients," and that he was honest, trustworthy, and in need of little or no supervision. He had seen no indication whatever that Francois was dangerous, basing his conclusion on his close association with Francois for years, and his many years of dealing with prison inmates and persons confined in mental institutions. He said he would be quite comfortable having Francois as a neighbor.

Because of his excellent progress and demonstrated stability, staff psychiatrists at Feliciana Forensic began writing and petitioning the trial court for permission to release Francois on limited passes to visit his family in New Orleans or to place him in a type of work-release program. The state trial judge either rebuffed or ignored all such requests. These staff personnel, psychiatrists, and psychologists informed the state court that Francois was behaving normally, was not dangerous, and was a candidate for release.

Eventually, in March of 1982, the state court ordered a hearing to determine the appropriateness of continued commitment.

1. In addition to having secured a master's degree in psychiatric social work and having completed courses toward his Ph.D., Henderson has a law degree and has served as Associate Warden of the Iowa facility housing the criminally insane, Warden of the Tennessee State Penitentiary, Warden at Angola, Tennessee Commissioner of Corrections, and, for more than eight years, the CEO at Feliciana Forensic.

After a hearing the court rejected the views of the staff psychiatrists in constant contact with Francois and accepted the equivocal testimony of Dr. Kenneth A. Ritter. Dr. Ritter declined to certify that Francois would not be dangerous to himself or others. In 1979 another psychiatrist had diagnosed Francois as being a paranoid schizophrenic. Dr. Ritter insisted that no one ever recovered from paranoid schizophrenia, one merely went into a state of remission, the periods of which were uncertain and unstable. In his testimony before the magistrate, when confronted with the unanimous favorable testimony of the many psychiatrists who had examined and treated Francois, Dr. Ritter, who had never treated Francois, conceded that he had "hedged" a bit in his earlier testimony because he did not want to be criticized should Francois be released and then commit a criminal act.

At a second release hearing in mid–1985, the medical testimony of six psychiatrists, letters from staff psychiatrists at Feliciana Forensic, progress reports, and the written report from a privately-consulted psychiatrist, all failed to overcome the negative testimony of Dr. Ritter. The court again denied probation or release to Francois, finding him mentally ill and dangerous. The intermediate appellate court affirmed, referring to the trial judge's 12 pages of reasons, which included the incredible conclusion that Francois' exemplary conduct, with no indication whatever of violence, actually buttressed his conclusion that Francois was mentally ill and dangerous, because Francois was feigning sanity. The Louisiana Supreme Court denied review on a 4–3 vote, with the chief justice and the next two most senior justices voting to grant a review.

With state remedies exhausted, the instant writ application was filed. The parties consented to trial before a magistrate, 28 U.S.C. § 636(c), who conducted an evidentiary hearing and rendered a comprehensive and scholarly opinion which concluded with an order directing the issuance of a conditional writ. Francois was to be gradually deinstitutionalized in accordance with a plan to be prepared by the staff of Feliciana Forensic. Upon receipt of this plan, the writ was issued. The state appeals, contending that the matter should have been remanded to the state court for its third consideration of Francois' condition. Francois cross-appeals, challenging the facial constitutionality of the Louisiana provisions governing release of insanity-acquittees.

## Analysis

The magistrate found that the state trial judge's ruling denying release was not only not supported by the record but was, in fact, contradicted by the evidence before him. We fully agree. The state's arguments to the contrary are simply not persuasive. Only slightly more persuasive is the state's call for a remand for consideration of "new" evidence. The magistrate considered this contention in detail. We agree with his analysis; there was no new evidence, merely an open and unbiased examination of the old evidence.

The "new" evidence is in three parts: (1) the testimony of Dr. Ritter that he had "hedged" in his earlier testimony and would not be uncomfortable with a program to deinstitutionalize Francois; (2) the use of new medical studies; and (3) evidence of Francois' present mental state. The state argues that the state trial judge should be given a chance to review this evidence because he might rule differently in light of it. First, the judge was aware that Dr. Ritter was "hedging" his opinion as he had in *Jackson v. Foti* and innumerable other similar cases. Second, the literature used was not new and questions about similar studies had been asked in the state hearing. Third, there had been no change in Francois' mental condition since early 1980. Except for growing older, he was the same in 1980, during the 1982 and 1985 state hearings, and during the federal evidentiary hearing.

Finally, the state trial judge was fully aware of the evidence presented to the magistrate. During the course of his testimony, when confronted with medical testimony that Francois was not schizophrenic, he stated emphatically: "I will reject [that]

testimony also." At the conclusion of his testimony before the magistrate, he stated his position with unqualified candor and clarity: "My opinion is what is in these 12 pages [referring to the 12–page opinion denying relief in the 1985 hearing], it has not changed, and at this moment, it will not change." The state's argument to the contrary notwithstanding, there is no reason to believe that if the evidence presented to the magistrate were again presented to this state trial judge that any different ruling would result.

■ Our painstaking review of the state trial record and the record developed before the magistrate, considered in light of the magistrate's carefully crafted opinion, persuades us that the magistrate was fully cognizant of his obligation to evaluate the state court's ruling on the basis of the record before that court and that he did so. Comity does not require a remand. *See United States v. Gillock,* 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980); *DeSpain v. Johnston,* 731 F.2d 1171 (5th Cir.1984); *Fulford v. Klein,* 529 F.2d 377 (5th Cir. 1976).

The magistrate concluded that he was not bound by the state trial judge's factual findings because those findings were "not fairly supported by the record." 28 U.S.C. § 2254(d)(8). *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Asper v. Estelle,* 709 F.2d 356 (5th Cir.1983). We agree with the magistrate's conclusion.

At the state hearing, as noted above, six psychiatrists testified. The record also contained Francois' progress reports, an independent psychiatric evaluation, and letters from the staff at Feliciana Forensic. The uncontroverted evidence established that Francois had been off medication and had exhibited completely normal behavior for more than five years. He had engaged in no violent conduct. Only Dr. Ritter demurred, but even he had to admit that he had never observed signs of schizophrenia or any other abnormal behavior in Francois, but that he made that diagnosis relying entirely on a 1979 diagnosis by another doctor. Notwithstanding, Dr. Ritter persisted in his opinion that Francois was mentally ill, suffering from schizophrenia, which apparently was in very "good remission." Significantly, Dr. Ritter rejected the statutory definition of mental illness with the cavalier comment, "That's the legal definition of mental illness, but that's not what mental illness is." [2]

In one relevant aspect Dr. Ritter agreed with all of the psychiatrists: one suffering from schizophrenia can "feign sanity" but only for a few hours. No schizophrenic can feign sanity for years on end.

Taken together we are persuaded beyond peradventure, as was the magistrate, that the state judge's factual findings were not fairly supported by the evidence before him; indeed, a fair reading of that evidence undermines every relevant finding he made.

■ Applying the statutory definition of mental illness, La.R.S. 28:2(14), it is manifestly clear that Francois does not suffer from "a psychiatric disorder which has substantial adverse effects on his ability to function and [which] requires care and treatment." He is not mentally ill under the Louisiana statute. Nor does the evidence establish that he presents a danger to himself or others.[3] *See Jackson v. Foti; Matter of L.M.S.,* 476 So.2d 934 (La.App. 1985); *State v. Boulmay,* 498 So.2d 213 (La.App.1986), *writ denied,* 503 So.2d 473 (La.1987).

■ Since Francois is not presently mentally ill, he must be deinstitutionalized. As

**2.** La.R.S. 28:2(14) defines a "mentally ill person" as: "any person with a psychiatric disorder which has substantial adverse effects on his ability to function and who requires care and treatment...."

**3.** "Dangerous to others" is defined as "the condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future." La.R.S. 28:2(3). "Dangerous to self" is defined as "the condition of a person whose behavior, significant threats or inaction supports a reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person." La.R.S. 28:2(4).

we stated in *Jackson v. Foti,* 670 F.2d at 522: "Mental institutions exist for the benefit of those who can be helped by care and treatment or who require custodial attention. They are not substitutes for prisons." Nor can they be permitted to become such.

 Because of this disposition of the state's appeal, we need not decide Francois' cross-appeal which challenges the facial constitutionality of Louisiana's insanity-acquittee provisions. But we feel compelled to make the following observations, so that our previous construction of Louisiana's commitment provision may be understood and kept in perspective.

As we noted in *Jackson v. Foti,* the Supreme Court has held that the equal protection clause requires the application of identical standards to civil and criminal commitment decisions. *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

In *Jackson v. Foti* we upheld the provisions of the Louisiana Code of Criminal Procedure relating to insanity acquittees because La.R.S. 28:59 called for commitment of insanity acquittees "in the manner provided for judicial commitment." Because of this language, we were able to read the provisions governing judicial (*i.e.* civil) commitments in conjunction with the criminal commitment articles. So read, Louisiana law provided a constitutionally adequate methodology for the dual finding of mental illness and dangerousness. La. R.S. 28:54(A), 55(E). *Jackson v. Foti,* 670 F.2d at 521. *See also, O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

Prior to 1987, La.R.S. 28:59 provided that an insanity acquittee could be committed only after a hearing and determination "by clear and convincing evidence that [the acquittee] is dangerous to self or others ... as a result of ... mental illness...." La. R.S. 28:55(E). This provision applied to both the initial commitment and the subsequent reviews. La.R.S. 28:56.

As a consequence of Acts 1987, No. 928, § 2, our analysis in *Jackson v. Foti* may no longer be made. As presently constituted, La.R.S. 28:59(A) provides: "Any person acquitted of a crime or misdemeanor by reason of insanity or mental defect may be committed to the proper institution in accordance with Code of Criminal Procedure Arts. 654 *et seq.* " Those articles of the Code of Criminal Procedure provide for the commitment of an insanity acquittee following a hearing to determine the single issue of dangerousness. La.C.Cr.P. art. 654. Hearings on applications for release are likewise limited solely to the dangerousness issue. La.C.Cr.P. art. 655–657. There is no requirement that there be a finding of mental illness, either initially or upon application for release. The only relevant inquiry is the dangerousness element.

This legislative change has provided for confinement of insanity-acquittees solely on a finding of dangerousness, and has made the mental institution the substitute for the prison in Louisiana. This violates the Constitution. *Jackson v. Indiana,* 406 U.S. at 724–25, 92 S.Ct. at 1851–52; *Baxstrom v. Herold,* 383 U.S. at 111–12, 86 S.Ct. at 762–63; *Jackson v. Foti,* 670 F.2d at 522 ("The propensity for danger is not enough."); *Powell v. State of Florida,* 579 F.2d 324, 332 (5th Cir.1978).

The judgment of the magistrate is, in all respects, AFFIRMED.