563 So.2d 1138 (1990)
STATE of Louisiana
v.
Terry FOUCHA.
No. 89-KK-1352.
Supreme Court of Louisiana.
June 14, 1990.
Martin E. Regan, Jr., for Terry Foucha defendant-applicant.
Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., for State of La. plaintiff-respondent.
MARCUS, Justice[*].
The issues in this case are whether defendant is dangerous to others or to himself under La.Code Crim.P. art. 657 and, if so, whether it is constitutionally permissible for dangerousness to be the test for the continued detention of a person found not guilty by reason of insanity.
Terry Foucha was charged by bill of information with committing aggravated burglary of an inhabited dwelling while armed with a .357 revolver in violation of *1139 La.R.S. 14:60[1] and illegal discharge of firearm in violation of La.R.S. 14:94.[2] Defendant entered a plea of not guilty and filed an oral motion for a sanity commission. The trial court granted the motion and appointed two experts in forensic psychiatry, Dr. Kenneth Ritter and Dr. Ignacio Medina, Jr., to examine defendant. The trial court initially found that defendant lacked mental capacity to proceed, but four months later found that he had mental capacity to proceed. After a hearing, on October 12, 1984, the court found defendant not guilty by reason of insanity.[3] The court found that he "is unable to appreciate the usual, natural and probable consequences of his acts; that he is unable to distinguish right from wrong; that he is a menace to himself and others; and that he was insane at the time of the commission of the ... crimes and that he is presently insane." The court ordered that he be committed to a mental institution pursuant to La.Code Crim.P. art. 654.[4] On April 30, 1985, he was admitted to the Feliciana Forensic Facility at Jackson, Louisiana. On June 11, 1987, the facility informed the trial court that defendant had requested a contradictory hearing to obtain periodic passes with family supervision. The court again appointed Dr. Ritter and Dr. Medina to determine defendant's present mental condition. After a hearing, the court ordered that defendant be returned to the facility for further care, custody, and treatment. Because the superintendent of the facility recommended that defendant be discharged or released, a review panel of three doctors was convened pursuant to La.Code Crim.P. art. 655.[5] On March 21, *1140 1988, the panel issued a report pursuant to La.Code Crim.P. art. 656[6] recommending that defendant be conditionally discharged.[7] On November 29, 1988, after a contradictory hearing, the court found that defendant was a danger to others and ordered him recommitted. The court of appeal denied defendant's application for writs, with one judge dissenting. We granted defendant's application to review the correctness of the decision not to release him.[8]
When a person has been committed after pleading not guilty by reason of insanity, the burden is upon the committed person to prove that he can be released without danger to others or to himself. La.Code Crim.P. art. 657.[9] "Dangerous to others" means the condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future. La.R.S. 28:2(3). "Dangerous to self" means the condition of a person whose behavior, significant threats or inaction supports a reasonable expectation that there is a substantial risk that he will inflict physical or severe emotional harm upon his own person. La.R.S. 28:2(4).
*1141 In a Feliciana Forensic Facility progress note dated August 23, 1985, Dr. Aris Cox, the Forensic Psychiatric Program Administrator at the facility, wrote that defendant "remains combative, agitated, and psychotic." In a facility progress note dated September 24, 1986, Dr. Porfirio Callo, a psychiatrist, wrote that defendant "continues to be a menace to society." The review panel stated in its March 21, 1988 report that defendant's "main diagnosis is Antisocial Personality Disorder," but there was "never any evidence of mental illness or disease since admission." The panel did not discuss whether defendant was dangerous. At the hearing on November 29, 1988, Dr. Ritter also stated that defendant has an antisocial personality. According to Dr. Ritter, at the time of the hearing there was no evidence of psychosis or neurosis and defendant was in "good shape" mentally. However, defendant previously had a drug-induced psychosis. If defendant was released, that psychosis could reassert itself. Dr. Ritter further testified that defendant's record at the facility showed recurrent problems. Defendant has been involved in altercations with other patients. Within the two months before the hearing, he had been sent to the maximum security section because of an altercation with another patient. Defendant's "attitude had been ... extremely paranoid,"[10] as well as arrogant and threatening. Dr. Ritter refused to say that defendant would not be a danger to others or to himself. The parties stipulated that if Dr. Medina were to testify, his testimony would be essentially the same. Under the circumstances, we are unable to say that the trial court abused its discretion in finding that defendant did not prove that he could be released without danger to others or to himself under La. Code Crim.P. art. 657.
Next, we consider defendant's contention that the dangerousness test of La. Code Crim.P. arts. 654-657 violates due process and equal protection.[11] Similar *1142 laws have been held constitutional. Hickey v. Morris, 722 F.2d 543 (9th Cir.1983) (upholding Washington law permitting insanity acquittee to be released only if there would be no substantial danger to other persons or no substantial likelihood of committing felonious acts jeopardizing public safety or security); Harris v. Ballone, 681 F.2d 225 (4th Cir.1982) (upholding Virginia law permitting insanity acquittee to be released only if the acquittee is not insane and his release would not be dangerous to the public peace and safety or to himself); State v. Mahone, 379 N.W.2d 878 (Wis. App.1985) (upholding Wisconsin law permitting insanity acquittee to be released only if there would be no danger to himself or others).
In Hickey, a class of insanity acquittees challenged Washington's criminal commitment and release procedures. They contended that the disparity between civil and criminal procedures denied them equal protection. The Ninth Circuit acknowledged differences in the civil and criminal procedures and held that the differences did not violate equal protection. The court reasoned:
The differences in review procedure reflect justifiable distinctions regarding the treatment of each class.
... The state has a substantial interest in avoiding premature release of insanity acquittees, who have committed acts constituting felonies and have been declared dangerous to society. Because "the insanity acquittal supports an inference of continuing mental illness," Jones v. United States, [463 U.S. 354, 366, 103 S.Ct. 3043, 3050, 77 L.Ed.2d 694 (1983)], the state's interest in protecting society and the acquittee himself justifies placing the burden on insanity acquittees to show that they no longer present a danger. See Powell v. Florida, 579 F.2d 324, 333 (5th Cir.1978).
Hickey, 722 F.2d at 548. The court also rejected the insanity acquittees' due process challenge based on the United States Supreme Court's opinion in Jones:
In Jones v. United States, the Court rejected a due process challenge to a District of Columbia statute that calls for automatic commitment of criminal defendants who successfully invoke the insanity defense. Jones however, precludes a due process challenge to the Washington commitment procedures. Jones does not directly address procedures for review and release of insanity acquittees. Nevertheless, the rationale of Jones compels us to reject this due process attack.
Id. (citations omitted). Similarly, the Fourth Circuit in Harris rejected an insanity acquittee's due process and equal protection claims:
[W]e face the ... question of whether a person may be incarcerated solely because he is dangerous. We hold that it is not a denial of due process for a person who has committed a criminal act to be incarcerated as long as he is considered dangerous. Nor do we think that this aspect of Virginia's scheme denies equal protection because a different standard (i.e., insane and dangerous) is used for persons other than insanity acquittees. Again, we think that the fact that an insanity acquittee has already been shown beyond a reasonable doubt to have committed at least one dangerous act justifies the distinction Virginia has drawn. See United States v. Ecker, 543 F.2d 178 (D.C.Cir.1976), cert. denied, 429 U.S. 1063 [97 S.Ct. 788, 50 L.Ed.2d 779]... (1977) (upholding the use of a different standard for determining if insanity acquittees should remain committed than is used for other committed persons).
Harris, 681 F.2d at 228.
In Louisiana, a defendant found not guilty by reason of insanity in a non-capital felony case is committed to a mental institution only if the trial court determines that the defendant cannot be released without danger to others or to himself. La. Code Crim.P. art. 654. The medical staff *1143 of the mental institution shall review the defendant's record sixty days and one hundred twenty days after commitment and every one hundred eighty days thereafter to determine his present mental condition and whether he is presently capable of being discharged, conditionally or unconditionally, without being a danger to others or himself. La.R.S. 15:211. When the superintendent of the mental institution is of the opinion that a person committed pursuant to art. 654 can be released without danger to others or to himself, he shall recommend the discharge to a review panel. If the review panel recommends to the court that the person be discharged, the court shall conduct a contradictory hearing. La.Code Crim.P. art. 655(A). Additionally, a person committed pursuant to art. 654 may apply to the review panel for discharge six months after the commitment and every year thereafter. La.Code Crim.P. art. 655(B). At the hearing, the burden shall be upon the committed person to prove that he can be discharged without danger to others or himself.[12] After the hearing, the trial court may order him discharged, released on probation subject to specified conditions, or recommitted to the mental institution. La.Code Crim.P. art. 657.[13]
Civil commitment procedures are set forth in Title 28 of the Louisiana Revised Statutes. Physicians may issue an emergency certificate for an involuntary fifteen-day commitment of a dangerous mentally ill person, La.R.S. 28:53, and any parish coroner or judge of a court of competent jurisdiction may order a person to be taken into protective custody for immediate examination if the person is mentally ill and in need of immediate treatment to protect the person or others from physical harm. La.R.S. 28:53.2. In addition, any person of legal age can initiate a judicial commitment proceeding. La.R.S. 28:54. After a hearing, a court may order a person judicially committed if it finds by clear and convincing evidence that he is dangerous to himself or others or is gravely disabled, as a result of mental illness. La.R.S. 28:55. Judicial commitments shall be reviewed by the court issuing the order sixty days and one hundred twenty days after commitment and every one hundred eighty days thereafter. At those intervals, the director of the treatment facility shall issue reports to the court setting forth the patient's response to treatment, his current condition, and the reasons why continued involuntary treatment is necessary to improve the patient's condition or to prevent it from deteriorating. La.R.S. 28:56(A). The court may at any time order a new hearing to determine whether the involuntary status should be continued. There must be at least one review hearing annually, conducted according to the procedures and standards set forth in La.R.S. 28:54, 55 and 56. La.R.S. 28:56(B). The director of the treatment facility may at any time convert an involuntary commitment to a voluntary one should he deem that action medically appropriate. He shall inform the court of any action in that regard. The director may discharge any patient if in his opinion discharge is appropriate. La.R.S. 28:56(C). However, when a patient has shown dangerous tendencies, he shall only be discharged by the superintendent upon the written consent of the division of hospitals after an examination and after sufficient guarantee of proper supervision of the patient *1144 by a reputable person. La.R.S. 28:96(E), 28:96.1(E).
We find that the differences in Louisiana procedure reflect justifiable distinctions between persons civilly committed and persons found not guilty by reason of insanity. As the Ninth Circuit stated in Hickey:
The class of insanity acquittees is composed of those committed by a different arm of the state for different reasons than civil committees. The different procedures are substantially related to the purposes of each statute and do not reflect discrimination against insanity acquittees. Our holding "accords with the widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." Jones v. United States, [463 U.S. at 370, 103 S.Ct. at 3053].
Hickey, 722 F.2d at 547. Accordingly, the dangerousness test of La.Code Crim.P. arts. 654-657 satisfies equal protection.
To determine whether a procedure satisfies due process, we must balance three factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The United States Supreme Court stated in Jones:
It is clear that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 [99 S.Ct. 1804, 1809, 60 L.Ed.2d 323] ... (1979). Therefore, a State must have "a constitutionally adequate purpose for the confinement." O'Connor v. Donaldson, 422 U.S. 563, 574 [95 S.Ct. 2486, 2493, 45 L.Ed.2d 396]... (1975).
Jones, 463 U.S. at 361, 103 S.Ct. at 3048. We find that the protection of society and defendant are constitutionally adequate purposes for continuing defendant's confinement. "There can be little doubt that in the exercise of its police power a State may confine individuals solely to protect society from the dangers of significant antisocial acts...." O'Connor v. Donaldson, 422 U.S. 563, 582-83, 95 S.Ct. 2486, 2497, 45 L.Ed.2d 396 (1975) (Burger, C.J., concurring). Hence, the dangerousness test of La.Code Crim.P. arts. 654-657 satisfies due process.
In sum, we find that the trial court did not abuse its discretion in finding that defendant did not prove that he could be released without danger to himself or others, and that the dangerousness test of La.Code Crim.P. arts. 654-657 is constitutional.

DECREE
For the reasons assigned, the judgment of the trial court is affirmed.
CALOGERO, C.J., dissents for reasons assigned by DENNIS, J.
DENNIS, J., dissents with reasons.
DIXON, C.J., dissents for reasons assigned in State v. Perez, 563 So.2d 841.
DENNIS, Justice.
I respectfully dissent.
The question presented is whether a person, who was committed to a mental hospital upon being acquitted of a criminal offense by reason of insanity, must be released when he is no longer mentally ill, although he may still be a danger to himself or others.

Due Process
The United States Supreme Court answered this question on due process grounds in Jones v. United States, 463 U.S. 354, 370, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983) when it said:

*1145 We hold that when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society.
It is true that the Supreme Court enunciated this holding in a case dealing with a different factual situation from that presented here. In Jones the issue was whether the petitioner, an insanity acquittee, had to be released because he had been hospitalized for a period longer than he might have served in prison had he been convicted. But I think it is self evident that the court intended its due process interpretation to be a neutral principle to be applied in all situations involving the confinement of insanity acquittees. The high court held that the length of the sentence that an insanity acquittee might have received had he been convicted was irrelevant because the two essential requirements of his confinement were his insanity and his danger to himself or to society; when one of these ceases he must be released, regardless of whether that occurs before or after the lapse of a hypothetical sentence he might have served had he not been acquitted. Id. 463 U.S. at 369, 103 S.Ct. at 3052.
Moreover, that Due Process will not permit a state to commit or continue to confine someone, civilly or criminally, without proof that he is both mentally ill and dangerous to himself or society was not only explicit in the court's holding and reasons but also implicit in its assumptions and analysis.
The petitioner in Jones, an insanity acquittee who had been hospitalized for longer than the one year he might have served for the petit larceny of which had been exonerated, based his argument on Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), "in which the Court held that the Due Process clause requires the government in a civil-commitment proceeding to demonstrate by clear and convincing evidence that the individual is mentally ill and dangerous." Jones, 463 U.S. at 362, 103 S.Ct. at 3048. He contended that these due process standards were not met in his case because the judgment of not guilty by reason of insanity did not constitute a finding of present mental illness and dangerousness and because it was established only by a preponderance of the evidence. Id. Therefore, he asserted, because an insanity acquittee's confinement is not based on a finding that he is both dangerous and mentally ill, the only conceivable legitimate justification for the automatic commitment and confinement of an insanity acquittee is to ensure that he does not escape confinement entirely. Because Jones had been confined longer than the prison term he might have received, he argued, this purpose had been fulfilled and he should be released.
The Supreme Court accepted Jones' argument that Due Process requires the government, in order to commit an insanity acquittee, to demonstrate that he is both mentally ill and dangerous, the same as it must in a civil-commitment proceeding. The Court rejected only his contentions that (1) a verdict of not guilty by reason of insanity lacks sufficient probativeness of both mental illness and dangerousness to justify commitment of the acquittee for the combined purpose of treatment and the protection of himself and society, id. 463 U.S. at 363-366, 103 S.Ct. at 3049-51; (2) an insanity acquittee's proof of his insanity in a criminal proceeding is based only on a preponderance of the evidence, as compared to the Addington v. Texas civil-commitment requirement of proof by clear and convincing evidence, id. 463 U.S. at 366-368, 103 S.Ct. at 3050-52; and (3) that he nonetheless was entitled to his release because he had been hospitalized for a period longer than he could have been incarcerated if convicted, id. 463 U.S. at 368-370, 103 S.Ct. at 3050-53.
Indeed, the Supreme Court in Jones made it clear that because "`commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection'" quoting Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979), a state must have "`a constitutionally adequate purpose *1146 for the confinement.'" quoting O'Connor v. Donaldson, 422 U.S. 563, 574, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975). Jones v. United States, 463 U.S. at 361, 103 S.Ct. at 3048. The court indicated throughout its opinion as well as in its explicit holding, that dangerousness alone is not a constitutionally adequate purpose for confinement and that an effective procedure by which the committee may obtain his release upon showing that he is no longer mentally ill is essential to a constitutional civil or insanity acquittee commitment system. In determining whether an acquittee should be released, the court indicated, "the critical question [is] whether the acquittee has recovered" 463 U.S. at 366, 103 S.Ct. at 3050, and that it is important that there be "assurance that every acquittee has prompt opportunity to obtain release if he has recovered." Id. This is because "[t]he purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous." Id. 463 U.S. at 368, 103 S.Ct. at 3052. "His confinement rests on his continuing illness and dangerousness." Id. 463 U.S. at 369, 103 S.Ct. at 3052.
In the present case, the relator, Terry Foucha, was charged with aggravated burglary, La.R.S. 14:60, adjudged not guilty by reason of insanity and committed to a mental hospital on October 11, 1984. After he had been confined for several years, the superintendent of the hospital and a review panel on March 21, 1988 recommended that he be released on probation. La.C.Cr.P. art. 655. The district court, upon receipt of the recommendation, conducted a contradictory hearing to determine whether the committed person can be discharged, or can be released on probation, without danger to others or to himself. La.C.Cr.P. art. 657. After the hearing, the district court ordered the relator recommitted to the mental hospital. The court of appeal, with one judge dissenting, denied writs. 89-K-0708 (La.App. 4th Cir.1989). We granted a writ to review the constitutional question presented. 548 So.2d 1215.
La.C.Cr.P. art. 657 provides that at the contradictory hearing to determine whether an insanity acquittee can be released on probation the burden is on the committed person to prove that he can be so released without danger to others or to himself. The relator failed to carry this burden because the only evidence regarding dangerousness was the testimony of a psychiatrist who said that he could not feel comfortable in certifying that relator would not be a danger to himself or others because relator had been involved in altercations with other patients at the hospital. On the other hand, relator, without a doubt, proved that he was not mentally ill. A psychiatrist appointed by the court to examine the relator testified that relator was in good shape mentally evidencing no signs of psychosis or neurosis; that upon commitment he probably had a drug induced psychosis, but that he had recovered from this temporary condition; and that he has a personality disorder, in that he has an antisocial personality, but that this condition does not constitute a mental illness and is not subject to medical treatment. The parties stipulated that a second court appointed psychiatrist who examined relator would give essentially the same testimony. The three review panel members signed a report stating that relator's main diagnosis is "Antisocial Personality Disorder" and that he had not displayed any evidence of mental illness or disease since admission. They recommended that he be released on probation subject to specified conditions. Considering this evidence, the district court found that relator is a danger to others and ordered him recommitted.
Applying the Due Process principles announced by the United States Supreme Court in Jones v. United States, supra, to this case, I conclude that the relator, a committed insanity acquittee, has clearly demonstrated that he has recovered his sanity, is no longer suffering from a mental illness, and is therefore entitled to be released on probation. La.C.Cr.P. art. 657 is an incomplete statement of the applicable Due Process principles in that it fails to provide that an insanity acquittee is entitled to be released upon proof that he is *1147 either no longer mentally ill or is no longer dangerous to himself or others. Consequently, the district court and a majority of this court fell into error when they failed to apply the statute within the light or the context of the constitutional requirements. Accordingly, the ruling of the district court should be reversed and the case should be remanded to that court with instructions to release the relator on supervised probation subject to conditions to be specified by that court.
For well reasoned opinions in accord, see Hopkins v. Lynn, 888 F.2d 35, 37 n. 2 (5th Cir. 1989)(Noting that the Circuit's previous expression that only presently mentally ill insanity acquittees may be confined is consistent with Jones v. United States, where the Supreme Court stated that an insanity acquittee's continued "confinement rests on his continuing illness and dangerousness." Supra, 463 U.S. at 369, 103 S.Ct. at 3052.); Francois v. Henderson, 850 F.2d 231, 236 (5th Cir.1988) ("[C]onfinement of insanity-acquittees solely on a finding of dangerousness ... [makes] the mental institution the substitute for the prison in Louisiana [and] violates the Constitution."); Jackson v. Foti, 670 F.2d 516 (5th Cir. 1982). The authorities relied on by the majority for the opposite proposition are weak. Harris v. Ballone, 681 F.2d 225 (4th Cir.1982) was decided prior to the Supreme Court's decision in Jones v. United States and is direct conflict with what the high court said in Jones. In Hickey v. Morris, 722 F.2d 543 (9th Cir.1984) the court upheld a Washington statute placing the burden on insanity acquittees to show that they no longer present a danger, but the statute also provided that insanity acquittees cannot be confined longer than the maximum penal term for the crime charged, unlike the majority's holding in the present case which permits confinement of insanity acquittees on dangerousness alone indefinitely, perhaps for life, and clearly for periods far in excess of the time they would have served had they not been acquitted of the crimes with which they were charged.

Equal Protection
The protection of equal laws demands that a state afford insanity acquittees substantially the same protections that it gives persons committed under the ordinary civil commitment statute. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); Jackson v. Foti, 670 F.2d 516 (5th Cir.1982); Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968); Powell v. Florida, 579 F.2d 324, 332 (5th Cir.1978). Accordingly, if Louisiana's current insanity-acquittee provisions are interpreted and applied literally and mechanistically in disregard of constitutional principles, as the majority does herein, they clearly do not afford insanity acquittees equal protection of the laws with respect to release from commitment. I agree with the analysis by the Court of Appeals in Francois v. Henderson, 850 F.2d 231, 236 (5th Cir.1988) setting forth the reasons that the Louisiana statutes, if literally interpreted, do not give insanity acquittees protection substantially equal with that afforded to civil committees:
As presently constituted, La.R.S. 28:59(A) provides: "Any person acquitted of a crime or misdemeanor by reason or insanity or mental defect may be committed to the proper institution in accordance with Code of Criminal Procedure Arts. 654 et seq." Those articles of the Code of Criminal Procedure provide for the commitment of an insanity acquittee following a hearing to determine the single issue of dangerousness. La.C.Cr.P. art. 654. Hearings on applications for release are likewise limited solely to the dangerousness issue. La.C.Cr.P. art. 655-657. There is no requirement that there be a finding of mental illness, either initially or upon application for release. The only relevant inquiry is the dangerousness element.
This legislative change has provided for confinement of insanity-acquittees solely on a finding of dangerousness, and has made the mental institution the substitute for the prison in Louisiana. This violates the Constitution. Jackson v. Indiana, 406 U.S. at 724-25, 92 S.Ct. at 1851-52; Baxstrom v. Herold, 383 U.S. at 111-12, 86 S.Ct. at 762-63; Jackson v. *1148 Foti, 670 F.2d at 522 ("The propensity for danger is not enough."); Powell v. State of Florida, 579 F.2d 324, 332 (5th Cir.1978).

Conclusion
Something is drastically wrong with a legal system that permits a person who is no longer mentally ill to be confined indefinitely, perhaps for life, in an institution for the criminally insane simply because he was acquitted of a crime (on the basis of insanity at the time of the offense), a crime for which, had he been convicted instead, he may have received a sentence of only a few months or years. In this respect the system is morally bankrupt and clearly violates fundamental notions of due process and equal protection of law. The teachings of the Supreme Court and Fifth Circuit decisions make this manifestly evident. In my opinion the majority has defaulted in its duty to afford the relator these basic safeguards and has advanced no convincing reason for its failure to do so.
NOTES
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case, having been a member and Chief Justice of this court when the case was orally argued and taken under advisement.
[1] La.R.S. 14:60 provides:

Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.
[2] La.R.S. 14:94 provides in relevant part:

A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
B. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities shall be fined not more than one thousand dollars, or imprisoned with or without hard labor for not more than two years, or both.
[3] Apparently, the court was relying on La.Code Crim.P. art. 558.1, which provides:

The court may adjudicate a defendant not guilty by reason of insanity without trial, when the district attorney consents and the court makes a finding based upon expert testimony that there is a factual basis for the plea.
[4] La.Code Crim.P. art. 654 provides:

When a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment.
When a defendant is found not guilty by reason of insanity in any other felony case, the court shall remand him to the parish jail or to a private mental institution approved by the court and shall promptly hold a contradictory hearing at which the defendant shall have the burden of proof, to determine whether the defendant can be discharged or can be released on probation, without danger to others or to himself. If the court determines that the defendant cannot be released without danger to others or to himself, it shall order him committed to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment. If the court determines that the defendant can be discharged or released on probation without danger to others or to himself, the court shall either order his discharge, or order his release on probation subject to specified conditions for a fixed or an indeterminate period. The court shall assign written findings of fact and conclusions of law; however, the assignment of reasons shall not delay the implementation of judgment.
[5] La.Code Crim.P. art. 655 provides:

A. When the superintendent of a mental institution is of the opinion that a person committed pursuant to Article 654 can be discharged or can be released on probation, without danger to others or to himself, he shall recommend the discharge or release of the person in a report to a review panel comprised of the person's treating physician, the clinical director of the facility to which the person is committed, and a physician or psychologist who served on the sanity commission which recommended commitment of the person. If any member of the panel is unable to serve, a physician or a psychologist engaged in the practice of clinical or counseling psychology with at least three years' experience in the field of mental health shall be appointed by the remaining members. The panel shall review all reports received promptly. After review, the panel shall make a recommendation to the court by which the person was committed as to the person's mental condition and whether he can be discharged, conditionally or unconditionally, or placed on probation, without being a danger to others or himself. If the review panel recommends to the court that the person be discharged, conditionally or unconditionally, or placed on probation, the court shall conduct a contradictory hearing following notice to the district attorney.
B. A person committed pursuant to Article 654 may make application to the review panel for discharge or for release on probation. Such application by a committed person may not be filed until the committed person has been confined for a period of at least six months after the original commitment. If the review panel recommends to the court that the person be discharged, conditionally or unconditionally, or placed on probation, the court shall conduct a hearing following notice to the district attorney. If the recommendation of the review panel or the court is adverse, the applicant shall not be permitted to file another application until one year has elapsed from the date of determination.
C. The superintendent of the mental institution shall, under both Paragraphs A and B of this article, transmit a copy of this report and recommendation to the person committed or his attorney and to the district attorney of the parish from which the person was committed.
[6] La.Code Crim.P. art. 656 provides:

A. Upon receipt of the superintendent's report, filed in conformity with Article 655, the review panel may examine the committed person and report, to the court promptly, whether he can be safely discharged, conditionally or unconditionally, or be safely released on probation, without danger to others or to himself.
B. The committed person or the district attorney may also retain a physician to examine the committed person for the same purpose. The physician's report shall be filed with the court.
[7] The panel recommended that defendant be discharged with the following recommendations:

1. He be placed on probation, the length to be determined by the court.
2. He remain free from intoxicating and mind-altering substances.
3. He attend a Substance Abuse Clinic on a regular basis.
4. He submit to regular and random urine drug screens at the local mental health center.
5. He be actively employed or seeking employment.
[8] 548 So.2d 1215 (La.1989).
[9] La.Code Crim.P. art. 657 provides:

After considering the report or reports filed pursuant to Articles 655 and 656, the court may either continue the commitment or hold a contradictory hearing to determine whether the committed person can be discharged, or can be released on probation, without danger to others or to himself. At the hearing the burden shall be upon the committed person to prove that he can be discharged, or can be released on probation, without danger to others or to himself. After the hearing, and upon filing written findings of fact and conclusions of law, the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or an indeterminate period, or recommitted to the state mental institution. Notice to the counsel for the committed person and the district attorney of the contradictory hearing shall be given at least thirty days prior to the hearing.
[10] A facility mental status examination update dated April 3, 1989, sent to the trial court by the facility after the court's ruling, states that defendant more often than not is "rather suspicious and paranoid and denies any responsibility for his actions. The paranoia he exhibited today upon interview does not seem exclusively related to the diagnosis of Antisocial Personality Disorder and probably reflects an additional Axis II diagnosis of Paranoid Personality.... He has minimal insight into his responsibilities for his own behavior...."
[11] Defendant relies on Francois v. Henderson, 850 F.2d 231 (5th Cir.1988), which indicates in dicta that La.Code Crim.P. arts. 654-657 are unconstitutional. Again in dicta, the Fifth Circuit agreed with Francois in Hopkins v. Lynn, 888 F.2d 35 (5th Cir.1989). According to Francois, "the Supreme Court has held that the equal protection clause requires the application of identical standards to civil and criminal commitment decisions." Francois, 850 F.2d at 236 (emphasis added). In fact, the United States Supreme Court has approved the application of different standards to civil and criminal commitment decisions. In Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the Court "held that the Due Process Clause requires the Government in a civil-commitment proceeding to demonstrate by clear and convincing evidence that the individual is mentally ill and dangerous." Jones v. United States, 463 U.S. 354, 362, 103 S.Ct. 3043, 3048, 77 L.Ed.2d 694 (1983). In Jones, the Court held that the "[t]he preponderance of the evidence standard comports with due process for commitment of insanity acquittees." Id. at 368, 103 S.Ct. at 3051. Moreover, "if the Due Process Clause does not require that an insanity acquittee be given the particular procedural safeguards provided in a civil-commitment hearing under Addington, then there necessarily is a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees." Id. at 362 n. 10, 103 S.Ct. at 3048-49 n. 10. Accordingly, we find the dicta in Francois and Hopkins to be unpersuasive.

Defendant also erroneously relies on Jones. In Jones, the Supreme Court did not consider whether it is constitutionally permissible for dangerousness to be the test for the continued detention of a person found not guilty by reason of insanity. The Court narrowly defined the issue before it. "The question presented is whether petitioner, who was committed to a mental hospital upon being acquitted of a criminal offense by reason of insanity, must be released because he has been hospitalized for a period longer than he might have served in prison had he been convicted." Id. at 356, 103 S.Ct. at 3045. The Court held that he did not have to be released. The Court also held that a finding of insanity at the criminal trial is sufficiently probative of mental illness and dangerousness to justify commitment and that the preponderance of the evidence standard comports with due process for commitment of insanity acquittees. In reaching its holding that the petitioner was not entitled to release, the Court stated that "[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous." Id. at 368, 103 S.Ct. at 3052. However, that statement reflects the Court's interpretation of the pertinent statutory law in the District of Columbia. Id. at 357 and n. 3, 103 S.Ct. at 3046 and n. 3.
[12] "[T]he placement of the burden of proof on the insanity acquittee at the release hearing does not violate either the equal protection clause or the due process clause." Benham v. Ledbetter, 785 F.2d 1480, 1491-92 (11th Cir. 1986).
[13] The Official Revision Comment (b) to this article states that the Comments to Sec. 4.08 of the A.L.I. Model Penal Code, upon which this article is based, states:

"It seems preferable to make dangerousness the criterion for continued custody, rather than to provide that the committed person may be discharged or released when restored to sanity as defined by the mental hygiene laws. Although his mental disease may have greatly improved, such a person may still be dangerous because of factors in his personality and background other than mental disease. Also, such a standard provides a possible means for the control of the occasional defendant who may be quite dangerous but who successfully feigned mental disease to gain an acquittal."